# ROSE KATHERINE HOELLINGER v. JOHN HOELLINGER.

## (166 N. W. 519.)

**Judgment — appeal from — divorce to defendant — property — awarding certain to plaintiff — entire judgment open to review — trial de novo in supreme court.**

    1. Upon an appeal, under § 7846, Comp. Laws 1913, from a judgment awarding the defendant a divorce upon his counterclaim, and awarding the the plaintiff certain property, the entire judgment is open to review and the cause subject to a trial *de novo* in the supreme court.

**Divorce action — property — may be divided in — only when a divorce is granted — trial de novo in supreme court — Court must consider propriety of both branches of judgment.**

    2. Section 4405, Comp. Laws 1913, authorizes a division of property between the parties to a divorce action only when a divorce is granted; and upon an appeal by the party to whom the divorce has been awarded, this court cannot try the case anew, under § 7545, Comp. Laws 1913, without determining the correctness of that portion of the judgment awarding the divorce, even though the appellant challenges directly only that portion of the judgment which relates to the property division.

**Recrimination — what constitutes — cruel treatment — both parties guilty of.**

 3. Under § 4373, Comp. Laws 1913, recrimination consists in the doing of any act which is a cause for divorce, and in this case the evidence shows recrimination in that each of the parties has been guilty of cruel treatment of the other.

Opinion filed January 31, 1918.

 · Appeal from District Court, Ward County, Honorable *F. E. Fisk*, Special Judge.

 Reversed.

 *McGee & Goss,* for appellant.

 "As to the quantum of proof required to establish a charge of adultery, the prevailing rule is that, as in other civil actions, such fact need be proved only by a preponderance of the evidence."' R. C. L. 328, § 105; Ellett v. Ellett, Ann. Cas. 1913B, 1215, and note, 157 N. C. 161, 39 L.R.A.(N.S.) 1135, 72 S. E. 861; Taft v. Taft, 12 Ann. Cas. 959, and note, 80 Vt. 256, 130 Am. St. Rep. 984, 67 Atl. 703; Chestnut v. Chestnut, 88 Ill. 548; Stiles v. Stiles, 167 Ill. 576, 47 N. E. 867; Heyman v. Heyman, 210 Ill. 524, 71 N. E. 591; Pittman v. Pittman, 72 Ill. App. 500; Lenning v. Lenning, 73 Ill. App. 224, 176 Ill. 180, 52 N. E. 46; Luther v. Luther, 87 Ill. App. 241; Shoup v. Shoup, 106 Ill. App. 167; Baker v. Baker, 136 Ky. 617, 124 S. W. 866; Allen v. Allen, 101 N. Y. 658, 5 N. E. 341; Farnworth v. Farnworth, 8 Ohio, S. & C. P. Dec. 171; Smith v. Smith, 5 Or. 187; Schulse v. Schulse, 33 Pa. Super. Ct. 325; Lindley v. Lindley, 68 Vt. 421, 35 Atl. 349; McDeed v. McDeed, 67 Ill. 545; Slater v. Slater, 73 Iowa, 764, 35 N. W. 439; Wabeke v. Wabeke, — Iowa, —, 98 N. W. 559; Gardner v. Gardner, 9 N. D. 192, 82 N. W. 872.

 Where adulterous disposition is shown to exist between the parties at the time of the alleged acts, then mere opportunity with comparatively slight circumstances showing guilt may be sufficient to justify the inference that criminal intercourse has actually taken place. 1 R. C. L. 329; Richardson v. Richardson, 4 Port. (Ala.) 467, 30 Am. Dec. 538; Dunham v. Dunham, 162 Ill. 589, 35 L.R.A. 70, 44 N. E. 841; Thayer v. Thayer, 101 Mass. 111, 100 Am. Dec. 110, 9 R. C. L. 331, citing under note 6, Burke v. Burke, 44 Kan. 307, 21 Am. St. Rep. 283, 24 Pac. 466.

"If an adulterous disposition is shown, and it appears that there was an opportunity for them to commit the offense, these acts are sufficient to establish adultery." 14 Cyc. 694, 696, note.

"Ordinarily, however, where the wife seeks a permanent allowance in a suit for divorce, her proof must be such as is requisite to entitle her to a divorce." 1 R. C. L. 936, and note 15; Pryor v. Pryor, 88 Ark. 302, 129 Am. St. Rep. 102, 114 S. W. 700; Ecker v. Ecker, 22 Okla. 873, 20 L.R.A.(N.S.) 421, 99 Pac. 918; Vigil v. Vigil, 49 Colo. 156, 39 L.R.A.(N.S.) 578, 111 Pac. 333; Davis v. Davis, 134 Ga. 804, 30 L.R.A.(N.S.) 73, 68 S. E. 594, 20 Ann. Cas. 20.

Such allowance is not based on the obligation to support, but on what would be a fair and just division of the common property, considered in the light of the degree of assistance rendered by the wife in its accumulation. 1 R. C. L. 937; Wilkins v. Wilkins, 84 Neb. 206, 133 Am. St. Rep. 618, 120 N. W. 907.

If there are no mitigating circumstances, and it would be inequitable to award her permanent alimony, none should be decreed. Ecker v. Ecker, 20 L.R.A.(N.S.) 424, and note, 22 Okla. 873, 99 Pac. 918; Davis v. Davis, 20 Ann. Cas. 25, and note, 134 Ga. 804, 30 L.R.A. (N.S.) 73, 68 S. E. 594; Methvin v. Methvin, 60 Am. Dec. 670, note; 1 R. C. L. § 85, p. 939.

Where she is chiefly at fault, or leaves the household without sufficient cause, or has been guilty of adultery, she is not entitled to separate maintenance. Helms v. Franciscus, 20 Am. Dec. 402, and note, 2 Bland, Ch. 544; Almond v. Almond, 15 Am. Dec. 781, and note, 4 Rand. (Va.) 662; Ecker v. Ecker, 22 Okla. 873, 20 L.R.A.(N.S.) 421, 99 Pac. 918; Davis v. Davis, 134 Ga. 804, 30 L.R.A.(N.S.) 73, 68 S. E. 594, 20 Ann. Cas. 20; Spitler v. Spitler, 108 Ill. 120; Hickling v. Hickling, 40 Ill. App. 73; Spaulding v. Spaulding, 133 Ind. 122, 36 Am. St. Rep. 534, 32 N. E. 224; Fivecoat v. Fivecoat, 32 Iowa, 198; Gaines v. Gaines, 26 Ky. L. Rep. 471, 19 S. W. 929; Dollins v. Dollins, 26 Ky. L. Rep. 1036, 83 S. W. 95; Robards v. Robards, 33 Ky. L. Rep. 565, 110 S. W. 422; Tuggles v. Tuggles, 17 Ky. L. Rep. 221, 30 S. W. 875; Shafer v. Shafer, 10 Neb. 468, 6 N. W. 768; Harris v. Harris, 31 Gratt. 13; Hedrick v. Hedrick, 28 Ind. 291; Stock v. Stock, 11 Phila. 324; Osgood v. Osgood, 2 Paige, 621; Whitsell v. Whitsell, 8 B. Mon. 50; Bray v. Bray, 6 N. J. Eq. 27; Goldsmith v.

Goldsmith, 6 Mich. 285; Latham v. Latham, 30 Gratt. 307; Methvin v. Methvin, 15 Ga. 97, 60 Am. Dec. 672; Platt Bros. & Co. v. Waterbury, 77 Am. St. Rep. 335 et seq. and note, 72 Conn. 531, 77 Am. St. Rep. 335, 45 Atl. 154.

The practice would seem to be to award either in gross or in instalments according to the circumstances of the case, and so as best to promote the rights and interests of the parties and particularly of the injured wife. 14 Cyc. 777.

It is error to award a specific property allowance in lands or other property. 14 Cyc. 780, and note and cases cited; Williams v. Williams, 6 S. D. 284, 61 N. W. 38.

No division in gross should be made, because the circumstances of this case do not warrant it, nor do they bring the case under the rule and reasons for such allowance in certain given cases. 1 R. C. L. 529; De Roche v. De Roche, 12 N. D. 17, 94 N. W. 767, 1 Ann. Cas. 221.

If any award in gross is here made or permissible, the allowance made is too great. It is excessive. De Roche v. De Roche, 12 N. D. 24, 94 N. W. 767, 1 Ann. Cas. 221; McDonald v. McDonald, 117 Iowa, 307, 90 N. W. 603; Dickerson v. Dickerson, 26 Neb. 318, 42 N. W. 10; 14 Cyc. 779.

*Greenleaf, Wooledge, & Lesk,* for respondent.

"When a divorce is granted, the court shall make such equitable distribution of the property of the parties thereto as may seem just and proper, and may compel either of such parties to provide for the maintenance of the children of the marriage, and make such suitable allowances to the other party for support during life, or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects." Comp. Laws 1913, § 4405; Laws 1911, chap. 184.

The common property accumulated may be divided in such manner as may seem just to the court, when a divorce is granted to either. Rindlaub v. Rindlaub, 28 N. D. 168, 147 N. W. 725; De Roche v. De Roche, 12 N. D. 17, 94 N. W. 767, 1 Ann. Cas. 221; Peckford v. Peckford, 1 Paige, 274; Peisch v. Ware, 4 Cranch, 352, 2 L. ed. 644; Lawrence v. Lawrence, 3 Paige, 267; Maryland Ins. Co. v. Woods, 6 Cranch, 49, 3 L. ed. 148; 1 R. C. L. 929–932.

In these matters the trial court is invested with large discretion, and its decision should only be reversed for clear abuse of such discretion. Baur v. Baur, 32 N. D. 297, 155 N. W. 792.

In the case of an absolute divorce the allowance of a gross sum is more consistent with the nature of the decree than a periodical allowance, because such a decree is a final winding up of the relations existing between man and wife, and is an absolute breaking of all marital ties. 1 R. C. L. 929; 14 Cyc. 781; Warne v. Warne, 36 S. D. 573, 156 N. W. 60.

The rule is that all wealth from whatever source derived should be considered in the property settlement. Muir v. Muir, 133 Ky. 125, 4 L.R.A.(N.S.) 909, 92 S. W. 314; Canine v. Canine, 13 Ky. L. Rep. 124, 16 S. W. 367.

"When a wife is entitled to any allowance at all, it is proper to give her what at least would be her dower interest in her husband's estate." McKean v. Brown, 83 Ky. 208; Hawkins v. Ragsdale, 80 Ky. 353, 44 Am. Rep. 483; Pereira v. Pereira, 156 Cal. 1, 23 L.R.A.(N.S.) 880, 134 Am. St. Rep. 107, 103 Pac. 488; Van Gorder v. Van Gorder, 54 Colo. 57, 44 L.R.A.(N.S.) 998, 129 Pac. 226; Davis v. Davis, 134 Ga. 804, 30 L.R.A.(N.S.) 73, 68 S. E. 594, 20 Ann. Cas. 20; Ecker v. Ecker, 22 Okla. 873, 20 L.R.A.(N.S.) 421, 99 Pac. 918; 14 Cyc. 768; 2 Bishop, Marr. & Div. 1891 ed. p. 436; Fitzpatrick v. Fitzpatrick, 127 Minn. 96, 148 N. W. 1075; Nichols v. Roberts, 12 N. D. 193, 96 N. W. 298; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132.

BIRDZELL, J.  This is an action for divorce, and comes before this court upon an appeal from the judgment of the district court of Ward county, decreeing a divorce to the defendant upon his counterclaim, and awarding to the plaintiff certain property as her separate estate; also awarding to the plaintiff the custody of a minor child, Angeline, a daughter, the only child of the marriage, who has since become of age.  The appeal is taken under § 7848, Comp. Laws 1913, and the appellant demands a review and a retrial of the entire case in the supreme court.  He indicates, however, in his assignment and in the briefs filed in this court, that he desires a review of only that portion of the judgment which awards the division of property.  In view of the conclusions reached by this court upon a painstaking study of the

voluminous record, we shall undertake to state only such facts relating to the marital relations as lead to our conclusions, and these will be stated in connection with the discussioin of the questions presented.

This case has been twice argued, the reargument having been ordered by the court for the purpose of clearing up doubts entertained with reference to the legal propriety of disposing finally of the case, as this court is directed to do under § 7846, Comp. Laws 1913, without a thorough consideration and review of that portion of the judgment which awards the defendant a divorce. While respondent does not complain of that portion of the judgment, it is nevertheless insisted on her behalf that the propriety of the property division ordered must be judged in the light of the facts disclosed by the whole record, which, her counsel argue, entitled her to a divorce. While the appellant accepts as correct the portion of the judgment which awards him a divorce upon his cross complaint, and insists that the record warrants the judgment in his favor, he expresses, through his attorney in open court, a willingness to abide the decision of this court as to whether the judgment should not be so modified as to continue the marriage tie. Nevertheless, the appellant contends that this court is powerless to enter any order which will have the effect of modifying the judgment of the lower court in a particular not urged by him upon this appeal. His contention is that, since there was no cross appeal, any portion of the judgment accepted by the appellant as satisfactory cannot be complained of by the adverse party. In this contention, for reasons that will be assigned later, we have concluded that the appellant is in error. It may be remarked here that the statute under which the appeal is taken makes it the duty of the supreme court to effect a final disposition of the case, if justice can be done, without a new trial in the lower court, and to this end this court is authorized to affirm or modify the judgment or direct the entry of a new judgment in the district court.

A brief statement of the procedural facts will lead to a better understanding of the legal questions presented.

It seems that, at the conclusion of the trial, the trial judge made a memorandum decision in which it was stated: "I have come to the conclusion that both parties are to blame, that both parties are guilty of acts sufficient to constitute cruel and inhuman treatment under the statute, and that, therefore, neither party is entitled to a decree of

38 N. D.—41.

divorce." The court also held that the custody of the child should be awarded temporarily to the mother, and that she, the mother, should receive $150 monthly, until the further order of the court, for the support of herself and child. Following this decision no formal findings were drawn, and, about three months thereafter, it appears that there was a substitution of attorneys; that motions were filed,—one for the reopening of the case for the purpose of taking further testimony touching the value of defendant's property, and another asking for the division of the defendant's property; that these motions were disposed of by the denial of the former motion and the granting of the latter. The motion granted was in the nature of a petition for division of the property, and it seems to have been based upon the unsatisfactory character of the provision made for the support of the plaintiff. The petition represents to the court that if it is necessary, under the law, that a divorce be granted, in order to make a permanent and equitable disposition of the property of the parties, the plaintiff petitioner "consents and is willing that the court enter a decree of divorce herein in favor of the defendant and against this plaintiff upon the grounds of extreme cruelty, as demanded by the defendant in his answer and counterclaim, if the court finds that the evidence herein is sufficient to support said grounds of extreme cruelty on the part of the plaintiff, without considering the testimony of the plaintiff herein relative to the acts of the defendant in so far as the same affects his right to a decree of divorce on the grounds of extreme cruelty; and provided that the court by granting the defendant a decree of divorce on said grounds can legally, and will, make an equitable division of the property, and by such decree set apart to this plaintiff, absolutely, such of the property of the parties hereto as to the court shall seem just and equitable." And that, "in the event that such permanent division of the property aforesaid cannot be lawfully made herein by the court, then this petition and consent to be of no force and effect whatsoever."

After the presentation of the foregoing petition the court made findings of fact and conclusions of law, and an order for judgment in accordance with the prayer of the petition. The court found the plaintiff guilty of assaults upon the defendant and of some acts termed indiscretions, which acts and conduct caused the defendant mental suffering, and also found or stated that, by reason of the long length

of time intervening between the taking of the testimony and the submission of the case to the court for determination, the court would not undertake to detail in particular any of the various acts of cruelty, which the evidence disclosed, upon the part of the plaintiff, and that the conduct of the defendant toward the plaintiff was partially responsible for and contributed to the same. Upon these findings the court concluded that the defendant was entitled to a divorce from the plaintiff and an equitable division of the property.

It becomes important at this point to determine whether or not this portion of the judgment is open to review upon this appeal, and, if so, whether the court can properly dispose of the appeal without entering into the merits of the whole judgment,—even the part which is not assailed. That portion of the judgment which distributes the property hinges directly upon the part which dissolves the marital status. This action is not brought to determine the separate property rights of the plaintiff and defendant, and there is no action known to the law whereby one spouse may obtain a separate interest in the property of the other while the marriage tie continues. While our law recognizes that there may be a suit for alimony and separate maintenance, independent of proceedings for divorce (Hagert v. Hagert, 22 N. D. 290, 38 L.R.A. (N.S.) 966, 133 N. W. 1035, Ann. Cas. 1914B, 925), the judgment, in so far as it affects the property of the defendant, can do no more than charge it with a lien for the payment of such alimony or maintenance. It is worthy of note in this connection that § 4401, Comp. Laws 1913, makes express provision for the allowance of maintenance in a divorce action where the divorce is denied, and that this section is entirely silent upon the matter of property division. Section 4405, Comp. Laws 1913, provides expressly for a distribution of the property when the divorce is granted. Since there is no proceeding known to the law wherein there may be a distribution of property between a husband and a wife, based upon their inability to continue the normal marital relations, the manifest implication of the foregoing statutes is that there can be no property distribution unless there be a judgment or decree of divorce. 1 Bishop, Marr. Div. & Sep. § 1415; 14 Cyc. 780, 789, 792; Murray v. Murray, 84 Ala. 363, 4 So. 239; Campbell v. Campbell, 37 Wis. 206. It follows from this that, where a judgment decrees both a divorce and a property distribution, the different portions

of the judgment are so far interdependent that any examination into the latter portion necessitates a review of the whole judgment for the purpose of determining the propriety of the judgment of divorce itself. Thus, when the appellant challenges particularly that portion of the judgment setting aside certain property to the respondent, and, to support his challenge, questions the correctness of the findings of fact upon which the distribution was based, he presents questions which involve the correctness of the judgment of divorce. It is the manifest duty of this court, upon an appeal of this character, to review the entire record for the purpose of disposing of the case according to the provisions of the statute under which the appeal is taken, and in divorce cases this duty rests upon the court regardless of the desires of counsel or parties that, if possible, the case be disposed of without affecting the judgment of divorce. We would be prone to adopt this view even if we regarded the question as being an open one in this jurisdiction, but we do not regard the question as being any longer open to dispute.

Where a retrial is had in this court under § 7846, Comp. Laws 1913, and where it is not limited to the review of specific *questions of fact,* the entire record is here for review for the purpose of enabling the court to enter such judgment as is appropriate upon the whole record. As was said by Chief Justice Corliss in the case of Tyler v. Shea, 4 N. D. 377, at page 385, 50 Am. St. Rep. 660, 61 N. W. 468: "The appellant could not ask for a new trial of the case with reference to those provisions of the judgment which were against him, and at the same time insist that the balance of the judgment favorable to him should stand without investigation. When a case is appealed for a new trial, the whole case is open for judicial inspection; and the decision upon such new trial must necessarily be founded upon an examination of the case as broad as that made by the lower court. . . . Where the claim is indivisible, and is all in dispute, the appeal for a new trial gives the defendant the same right to be heard on the whole case which it gives to the plaintiff who appeals. In such a case, the ordinary rule that the respondent cannot complain of those portions of the judgment which are against him, or, indeed of any portion of the judgment, does not apply, because the appellant, by the nature of the relief he seeks by his appealing for a new trial, opens up the entire case to a second investigation."

It is true that the act under which the appeal in that case was taken contained no provision authorizing the appellant to specify in the statement of the case questions of fact that he desired the supreme court to review, as does § 7846, Comp. Laws 1913. But the above quotation is as applicable upon this point to the case at bar as though the statute had never been modified. The appeal is from the entire judgment, the trial is a trial *de novo,* and the appellant cannot complain if this court carries its review of the evidence to the point of determining the correctness of a related portion of the judgment, which must rest upon the facts that he asks this court to review. In brief, the appellant's attempted limited specification of facts is in reality not a specification of facts at all, but rather a specification of conclusions which the appellant contends are erroneous. What he really contends for is the right to have a review of a portion of the judgment appealed from. This court has held that there can be no such thing as a trial *de novo* in the supreme court upon an appeal from a portion of the judgment, and there are excellent reasons why an appellant cannot do indirectly, upon an appeal from a judgment, what he is not permitted to do directly by appealing from a portion of the judgment. See opinion by Young, Justice, in Prescott v. Brooks, 11 N. D. 93–101, 90 N. W. 129. From the rule that there can be no appeal and trial *de novo* as to a portion of the judgment under § 7846, Comp. Laws 1913, it must be accepted as a corollary that there can be no trial *de novo* in this court as to a portion of the judgment, where the whole is appealed from, except, of course, a partial review of questions of fact only. Sound practice requires that this should be so. If an appellant who has appealed from the entire judgment, and who has specified in his notice that he desired a review of the entire case, could subsequently limit his appeal to a review of a portion of the judgment alone, he would have it within his power to thereby unduly prejudice an adverse party. The respondent has the right to rely upon the notice of appeal as removing to this court the entire record for trial *de novo.* It is reasonable to assume that he is contended with the judgment of the lower court as it stands, and that he will be prepared to substantiate it upon a full review in this court. Surely he is not bound to anticipate that the appellant may later on attempt to limit the appeal by asking for a review of certain portions of the judgment only! Such a practice would necessitate a cross appeal

by the respondent in every case as a matter of precaution. Being of the opinion that the entire judgment is here for review, we are now brought to a determination of the facts upon which the correctness of the decision of the trial court depends.

A perusal of the record convinces us beyond peradventure that the statement of the trial court in the memorandum decision rendered at the close of the trial, and upon which no formal findings and conclusions were made, was fully warranted by the testimony.

The record is replete with testimony going to show that both plaintiff and defendant have repeatedly been guilty of acts of cruelty toward one another, and the testimony upon both sides is amply corroborated by witnesses other than the parties themselves, and by the circumstances as they are presented in the record. It appears that for a period of several years there has been lacking the mutual confidence in the fidelity of each to the other that is essential to the enjoyment of an harmonious married life; and it also appears that this lack of confidence was so frequently expressed by both parties as to afford a constant source of friction between them, provoking many quarrels of a more or less violent nature.

It is true that the testimony of the plaintiff and the defendant conflicts with reference to the character of the expressions used by the defendant from time to time, and also with reference to the character of the acts of cruelty of the plaintiff towards the defendant; but a careful reading of all of the testimony bearing upon their frequent quarrels leads irresistibly to the conclusion that both parties were at fault. If the plaintiff was guilty of cruelly treating her husband, it quite conclusively appears that the conduct of the husband towards the plaintiff was such as to arouse her temper, and to provoke the assaults; and to the extent that the defendant was guilty of cruelly treating his wife, it appears that her conduct and her temper largely provoked his acts.

It would serve no good purpose here to narrate in detail the various acts of cruelty testified to by the various witnesses, with a view to weighing and sifting the testimony for the purpose of ascertaining where the exact truth lies with respect to each transaction testified to. After spending a great amount of time in considering the testimony,

we are confident that it amply supports the conclusion that each of the parties has been guilty of cruelty towards the other. This alone is a sufficient reason for denying a divorce.

Bishop on Marriage, Divorce, and Separation, lays down what we regard as the correct rule applicable to cases of this character. It is stated thus: "Recrimination in divorce law is the defense that the applicant has himself done what is ground for divorce either from bed and board or from the bond of matrimony. It bars the suit founded on whatever cause, whether the defendant is guilty or not." 2 Bishop, Marr. Div. & Sep. § 340. And again the rule is stated thus: (§ 365) "It is a bar to any suit to dissolve a valid marriage, or to separate the parties from bed and board, that either before or after the complained-of *delictum* transpired, the plaintiff himself did what, whether of the like offending or any other, was cause for a divorce of either sort." Where, as in North Dakota, the legislature has provided the same legal effect for every recognized cause for divorce, it is not for the courts to measure the gravity of the different causes. They should not determine that an offense which, in their judgment, may be a stronger cause for divorce than some other which is recognized by the legislature, overcomes the effect of the complaining party's seemingly lesser offense. In fact, § 4393, Comp. Laws 1913, expressly recognizes as recriminatory any acts on the part of the complaining party which are a cause of divorce against such party. This is even true where a divorce is sought on the ground of adultery, and where the spouse who charges the adultery is guilty of what may be termed a minor cause for divorce. See Wilson v. Wilson, 89 Neb. 749, 132 N. W. 401; Pease v. Pease, 72 Wis. 136, 39 N. W. 133; Church v. Church, 16 R. I. 667, 7 L.R.A. 385, 19 Atl. 224. Note to Ellett v. Ellett, 39 L.R.A.(N.S.) 1135.

It is very earnestly argued on behalf of the appellant that the record establishes a charge made by the defendant in his cross complaint, that the plaintitff had committed adultery. Even though this were established, we would not feel warranted in granting the divorce for the reasons indicated above. But notwithstanding this, we have carefully considered all of the testimony bearing upon this charge, and find it lacking in that degree of directness and circumstantial strength to warrant a finding that the plaintiff was guilty of adultery on any of

the occasions alleged. We feel that the most that can be said of the acts of the plaintiff in her relations with other men is that her acts amounted to indiscretions. There is no evidence in the record going to establish such charge directly, nor is there any evidence proving circumstances to have existed from which the inference of guilt should be drawn.

It is a well-established rule that, where adultery is relied upon as a ground for divorce, the proof must be clear and positive. 14 Cyc. 692, and authorities cited thereunder. And that, where circumstantial evidence is relied upon as establishing the guilt of the accused, the circumstances must be sufficiently strong to warrant "a just and reasonable man" in drawing the inference of guilt. If the circumstances merely create a suspicion of guilt, it is not sufficient. 14 Cyc. 694. We are all agreed that the defendant in this case did not substantiate a charge of adultery by evidence which was legally sufficient to sustain the burden of proof.

Being of the opinion that, under the evidence disclosed by this record, neither party is entitled to the relief prayed for, the questions at issue respecting the property division cannot be disposed of by awarding a division of the property, as was done by the trial court. The evidence, however, bearing upon the valuation of the defendant's property and of the defendant's financial worth is of such an unsatisfactory character that we feel that an injustice might result to this plaintiff by reason of awarding alimony, based upon the evidence taken at the trial, which was had more than two years ago. The case is therefore remanded to the trial court for the taking of additional testimony bearing upon the value of the defendant's property and his financial worth, and the trial court is directed to enter an order providing for alimony to be allowed to the plaintiff in such sum as shall seem to him proper under such evidence and all the circumstances. There shall also be awarded to the plaintiff $1,000 suit money, incident to this appeal, and the defendant and appellant shall pay the costs hereof. The child, Angeline, having become of age during the pendency of this proceeding, requires no further protection by the order of the court. The judgment of the trial court, awarding a divorce and property division,

is reversed and the cause is remanded for further proceedings in accordance with this opinion.

GRACE, J.   I dissent.

ROBINSON, J. (dissenting).   This is an action for the dissolution of a matrimonial partnership and a division of the partnership property.   The district court decreed a dissolution on the ground of cruelty, awarding the plaintiff about $50,000, or one third of the property. The suit was commenced two and one-half years ago, and it has been pending in this court for ten months.   In the early summer it was argued at great length, and afterwards, in about three months the arguments were repeated.   The argument was only in regard to the property.   Now a decision is given reversing the trial court, and holding that on the question of cruelty honors are easy; that the cruelty on one side fairly offsets the cruelty on the other.   Hence, the court denies a dissolution of the partnership and a division of the property. It requires John to dole out to Katherine an occasional pittance so she may eat from his hand and partake of the crumbs which fall from his table.   The long and specious arguments were well calculated to deceive and mislead the court.   It was strenuously contended that Katherine had not been so good and so chaste as John, and that, therefore, she should receive only a small annuity.

The appeal presents no question only on the division of the property.   However, in their zeal for supposed righteousness and their bent for old laws and customs, our judges think it well to punish both parties by putting them on probation, keeping them another three years in a state of wedded celibacy, and forcing them to waste a good part of their wealth in another vexatious suit.   That is all dead wrong.

Some two decades ago, in the springtime of life, the parties met and entered upon a matrimonial partnership.   They had no fear of commencing life with nothing so they grew up with the magic city.   By industry, frugality, and good luck they soon commenced to accumulate a fortune.   She ate not the bread of idleness.   Were it not for her thrift and industry, the chances are there would be no occasion to quarrel over property.   By watchful care, industry, and working early and late cooking for 150 to 200 guests at a time, she turned her hotel into

an Alladin's lamp and made wealth for her John to squander. While he made expensive tours over the country, sojourning at Dreamland in Spokane and for several moons with the fair nymphs of Paris and Hong Kong, she kept her hotel and made the wealth; and yet his home-coming messages gave no assurance of devotion, no token that absence makes the heart grow fonder.

However, as Katherine made the wealth, she very unwisely kept the bank account and all the property in the name of her assumed lord and master. In that way she suffered herself to be put in the position of a dependent, and not an equal partner. Had she from the start in-sisted on courteous treatment and on keeping her share of the property and money in her own name, or on an immediate dissolution of the partnership, then the outcome would have been very different. Then, there would have been no threats to turn her onto the streets without a penny, and no necessity of a suit for a division of the property.

Concerning the cruelty, it is in no way possible to fairly represent it. It is hard to conceive of a course of more continuous, persistent, and heartless cruelty than that inflicted on the plaintiff. Her testimony is circumstantial and credible, and it is in the main well corroborated by several witnesses. It shows that during some ten years on all occasions she was grossly insulted and falsely charged with crime, and beaten and pounded black and blue. She was baited and insulted so as to provoke her to resent it by assaulting the defendant that he might the further pound her. She was treated to a continuous and daily course of nagging and baiting. In 1908, on her return from the hospital after a serious operation, he came home intoxicated, got on her stomach with his knees, pulled her hair, kicked her out of the bed, and mauled her around. She says: "He kept it up for an hour and got so vicious that the daughter, Angeline, called in the night clerk. I was laid up for a good long time after that." In September, 1914, he returned from a trip to the west, and commencing baiting her about her dress, calling her a whore and a chippy until she slapped his face,—and then he beat her black and blue,—struck her head against the wall. Her aged mother was with them, and the result of such treatment was to seriously injure her health, make her a nervous wreck, and cause her a continuous headache. The plaintiff testifies: "He called me whore and bitch every few days, and, by the time my bruises were healed, I

got new ones on top." Then it seems he was always loving and doving the chambermaids, calling them pet names, visiting them in their rooms. She was driven to commence a prior divorce suit. They made up and agreed to forgive and forget, and he at once commenced the same old thing, and worse. He got more violent and more aggravating. It was a constant uproar all the time. When she went to early mass and confession with her daughter, Angeline, John did not think her penance sufficient and so he had to give her a good beating. The daughter, Angeline, testifies: He continued pounding her mama while she was begging him to stop. Angeline testifies that, when she was a child, he beat her fully three times a day. She feared him and ran away, and he ran after her and beat her on the way home. His home was as the Deserted Village:

"No children run to lisp their sire's return,
And climb his knees the envied kiss to share."

Of course the plaintiff was a woman of some spirit, and not a dog to lick the hand that beat her; and so it may be that at times she attempted to take her own part and to give blow for blow and abuse for abuse, and that she did not tamely submit to her treatment. That was all very proper and right. But she was by far the weaker of the two, and it is sheer folly to say that she was the aggressor and that she was guilty of love's treason. When the lion and the lamb lie down together, and the latter gets up covered with marks of violence, we must not think that the lamb was the aggressor. Defendant denies the testimony of the plaintiff and all her witnesses. He said they all lied. But his testimony is wholly incredible; it is not true.

He was insanely jealous, and it seems he thought by beating, nagging, and baiting his spouse to drive her to desertion or to submission and affection. To throw off her loneliness and her burden of care and sorrow, she consorted with one or more vivacious lady friends, and played the part of the Merry Wives of Windsor. This the court terms an indiscretion, and doubtless it looked awful bad to John. Like the master Ford of Shakespeare: "He could little understand his wife's love of her lively neighbors' company or the feminine necessity for a change of scene and lively diversion." So he did not make amends by going on his knees and saying to her: "Pardon me, wife. Henceforth

do what thou wilt. I rather will suspect the sun with cold than thee with wantonness."

The trial of this case and the conduct of the appeal is itself a sufficient cause for a divorce. It shows no spirit of gallantry or fairness. It is in keeping with the charge of cruelty made in the complaint. For two weeks the ordeal of the trial was protracted while resort was had to every device to humiliate the plaintiff and besmirch her womanhood. She was openly and persistently and shamefully and falsely charged with crime. She was continuously harassed and insulted by counsel concerning alleged crimes and other vexatious matters. She was treated without respect due to a wife and mother. In all fairness and honor the plaintiff is entitled to an equal share of the property. The trial court awarded her only one third of it, and yet the defendant appeals to this court, and hires lawyers and ex-judges to come here to slander the plaintiff. Her own property held in trust in the name of the defendant is used to hire lawyers to traduce her.

The judgment should be affirmed.