[File No. 7173]

GERDA HENRY, Plaintiff—Appellant—Respondent, v.
ROLAND HENRY, Defendant—Respondent—Appellant.

(46 NW2d 701)

Opinion filed December 11, 1950.   Rehearing denied March 6, 1951

*Geo. A. McGee* and *Ella Van Berkom,* for appellant—respondent.

*W. H. Adams* and *Asmunder Benson,* for respondent—appellant.

BURKE, J. In this action, which is one for divorce, both parties have appealed. A trial de novo of the issues concerning the custody of the children of the parties and the allowances for alimony, support money and attorney's fees has been demanded.

The plaintiff, Gerda Henry, and the defendant, Roland Henry, were married on May 3, 1942. At the time of their marriage, Gerda was twenty-two years old and Roland was thirty-seven. As Roland was about to be inducted into the army, they lived in the home of defendant's parents until his call to active duty came in June 1942. Gerda remained at defendant's parents' home for two or three weeks more and then joined her husband in Kentucky. She remained with him in Kentucky for about five months, returning to North Dakota when her husband was transferred to a station in another state. Upon her return to North Dakota, she resumed the employment in which she had been engaged prior to her marriage. She continued in that employment until her husband was discharged from the army and returned home in July 1943. After Roland's return they lived with his parents for a few weeks while their home was being finished.

The Henrys are prosperous farmers. Roland farmed in partnership with his father, Bert Henry, and two of his brothers under the partnership name of Bert Henry and Sons. Headquarters of the partnership was at the Bert Henry farm home. It was there that all the farm machinery was kept and it was there that farming operations were planned. The homes of the four partners were in the same farming neighborhood and Roland's home was less than a mile distant from his father's home.

The first child of plaintiff and defendant, Donald Roland Henry, was born April 24, 1944, and the second child, Dale D. Henry, was born on November 19, 1945.

In August 1946, plaintiff was stricken with infantile paralysis.

She was very ill and as a result of the illness both of her legs were paralyzed. At the time of the onset of this illness she was taken to the hospital at Bottineau where she remained about four months. On Thanksgiving Day, 1946, she and her husband and their children, moved to a home Roland had rented in Bottineau. The maid who had been employed at their farm came to do the housework.

During the first two weeks in the new home the physiotherapist who had been giving Gerda Henry exercise treatments in the hospital, came to their home each day. She gave Gerda her treatments and instructed Roland in the method of treatment. Thereafter Roland gave his wife the recommended treatments each day. On April 1, 1947, Roland and his family moved back to the farm. Two weeks later Gerda was taken to the Minot Hospital for additional treatments. The plan of the parties was that she was to stay at the hospital but that she was to return home weekends. About two weeks later the "hired girl" at the parties' home quit her job. She left in the middle of a week and the defendant's mother came to take care of the children. On the following Sunday there was a gathering of relatives of both parties at their home. Roland's mother, one of his Henry sisters-in-law, and at different times during the day three of his brothers were present. Gerda's father and sister were also present. On that day after a conference which lasted all day long, Roland, on the advice of his brother, Howard, reluctantly agreed to his wife's proposal that the two children be placed in the home of her sister in Maxbass. The family of the sister consisted of herself, her husband and one child. The arrangement was that Roland would pay one-half of the grocery bill and laundry bill at the sister's home and that he would be welcome to visit at any time and stay all night if he wished. Thereafter Gerda never returned to stay in the parties' home. She continued taking treatments at the Minot Hospital until the latter part of July 1947, and on weekends, she went to her sister's home in Maxbass. Roland spent his weekends there with his family and drove Gerda back and forth between Maxbass and Minot. By the end of July 1947, Gerda had completed the course of treat-

ments at the Minot Hospital. By that time she had regained the ability to stand and walk short distances with the aid of crutches. On leaving the hospital she moved to her sister's home and for a time Roland continued to spend weekends with the family. From this time forward, however, the relations between the parties and particularly between Roland and Gerda's sister and father seem to have become progressively more strained. After October 1, Roland refused to stay in the sister's home and came only to visit the children. It is apparent, that from this time on, Roland attempted, in so far as possible, to avoid contact with his wife's relatives. When he visited the children, he would take them riding in his car and avoided entering the sister's home if possible.

In November 1947, Gerda and the children with Roland's reluctant consent, moved to her parents' home. The financial arrangement was that he would pay two-thirds of the grocery bills and the laundry bill. After Gerda moved to her parents' home, the relations between the parties continued as before, except that Roland did eat Thanksgiving dinner with the family and at Christmas time he took Gerda on a two day trip to Minot to do her Christmas shopping.

In May 1948, Gerda commenced this action for divorce. In her complaint she alleged that the defendant had been guilty of extreme cruelty which caused her grievous mental suffering. The specific acts of cruelty which she charged are: (1) that decisions concerning the home of the plaintiff and defendant were made only after defendant had consulted with his family; (2) that defendant, although financially able, refused to provide plaintiff with adequate medical care; (3) that defendant encouraged the children to treat their mother disrespectfully and (4) that defendant acted toward the plaintiff in a way which indicated a complete disregard of lack of sympathy for her physical disability. In his answer, defendant specifically denied all of the allegations of plaintiff's complaint and alleged that he had given his consent to the removal of his children to the homes of his wife's relatives only in consideration of his wife's physical

condition, and that his wife and her relatives had not kept their agreement concerning his right to visit the children. He asked only that the divorce be denied.

While neither party has challenged that part of the decree which granted the divorce, both have demanded a trial de novo upon questions which require a consideration of all of the evidence in the case. That is to say: a trial de novo upon the questions of custody and allowances cannot be had unless we view all of the evidence concerning all of the acts of the parties including those which it is claimed afford grounds for the divorce. Such a view of necessity brings into focus all of the issues in the case. These demands therefore open the entire judgment to review. In Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519, this court said: "It is the manifest duty of this court, upon an appeal of this character, to review the entire record for the purpose of disposing of the case according to the provisions of the statute under which the appeal is taken, and in divorce cases this duty rests upon the court regardless of the desires of counsel or parties that, if possible, the case be disposed of without affecting the judgment of divorce. . . . Where a retrial is had in this court . . . and where it is not limited to specific *questions of fact* the entire record is here for review for the purpose of enabling the court to enter such judgment as is appropriate on the whole record."

In support of her allegation concerning the interference of defendant's relatives in the family affairs of plaintiff and defendant, plaintiff testified, that the defendant's father, Bert Henry, took it upon himself to plan the details of the arrangement of their home; that Bert Henry scolded her for buying a vacuum cleaner; that defendant's mother and sisters-in-law called her on the telephone almost every day; that defendant seldom took her any place alone but always invited some of his relatives to go along; that defendant visited at his parents' home almost every day, and that defendant refused to accede to her requests to rent a home in Bottineau or to permit their children to be moved to the home of plaintiff's sister and later to

the home of plaintiff's father and mother until he had been advised so to do by some of his relatives.

Plaintiff's testimony concerning medical treatment disclosed that she had received medical treatment at Bottineau and Minot. She testified that she requested the defendant to take her and the children to some other place for treatment and that defendant said, "If you go away for treatment, I am not taking you, somebody else can take you." She stated that that ended the matter as "there was nothing else to say." The fair inference from her testimony is that she refused to go away for treatment unless the defendant and the children would accompany her.

As to her allegation that defendant had encouraged the children to treat her disrespectfully, plaintiff testified that on several occasions defendant did not correct or reprimand the children when they struck her or called her vulgar names in his presence and that he interfered with the discipline of the children by letting them have their own way concerning the time of going to bed and their choice of food at meals.

In support of her allegation that defendant acted toward her in a manner which indicated a complete lack of sympathy with her condition, plaintiff testified that the defendant deliberately hurt her when he gave her her exercises by moving her paralyzed limbs, in the course of such exercise, beyond the point of comfort and by moving her wheel chair, when she was being transferred from her bed to her wheel chair in such a manner that her legs would fall against the chair. She also testified that defendant told her she could walk if she wished and on one occasion stated that he was "tired of polio in the head."

The defendant testified that his father did not interfere in the building of his and plaintiff's home; that he supervised its construction because he understood building methods and defendant did not. He said he invited relatives and others to go with them to town because of tire and gasoline rationing and because he liked company, and that plaintiff occasionally objected to having others along. He stated that he went to his parents' home often because farming headquarters of Bert Henry and Sons were located there. He denied that he had ever refused

his wife medical treatment or that he had ever refused to take her away for treatment but stated that she had refused to go away when he asked if she wanted to go. Concerning the discipline of the children, defendant agreed that he had not reprimanded them on the occasions described by plaintiff. He stated that the oldest child was about two and one-half years old when the incidents occurred; that he did not believe that the child struck his mother intentionally and that he thought the child would forget the vulgar word he had used if it were not fixed in his mind by a reprimand. He stated that on one occasion when his wife scolded him in the presence of the children and her relatives for leaving the table at meal time to get one of the children the kind of sauce he wanted, he said he was "tired of polio in the head."

Other evidence in the case indicates a difference of opinion between the plaintiff and the defendant as to the methods to be used in raising the children. The mother insisted upon a strict regimen, with naps, meals and bedtime at a set hour every day. She felt that the children should eat what was set before them at the time it was set before them. The father on the other hand, apparently felt the children would eat when they were hungry and go to bed when they were tired and did not cooperate to force them to do either when they didn't want to.

It was this difference of opinion which produced most of the conflict between the parties after the plaintiff had moved with the children to her sister's home and later to the home of her father and mother. When defendant attempted to see his children he found himself circumscribed by rules and regulations with which he was not in sympathy. If defendant came at naptime he couldn't see the children, if he came at other times he was instructed to have them back, either at mealtime, naptime or bedtime. If he violated any of the rules, by bringing them back late or by buying them ice cream or candy between meals he was criticised not only by the plaintiff but by her relatives.

Incidents which arose out of this situation led to the final break between the parties and this action for divorce. It is clear that each party thought the other unreasonable and that

eventually each developed a distrust of the other's motives. The father concluded that the rules and regulations were enforced with the view of limiting his opportunities for seeing his children to a minimum and the mother decided that the father's tendency to humor the children was a calculated one which had for its object the stealing of their affection from her.

Upon the record we are satisfied that plaintiff has not established grounds for divorce. There is no evidence that defendant permitted interference by his family in the affairs of the parties in a manner which would cause plaintiff mental suffering. In fact the three principal incidents testified to by the plaintiff concerning the renting of the house in Bottineau, the removal of the children to her sister's home and later to her parents' home were occasions when defendant's family advised him to do as she requested. There is no evidence that defendant refused to provide plaintiff with adequate medical care. On the contrary the evidence shows that plaintiff had excellent care under the supervision of specially trained physicians and physiotherapists and that defendant expended over $1,700.00 in providing that care. There is no proof that defendant encouraged the children to treat their mother disrespectfully. His view as to the advisability of a reprimand was a reasonable one. Plaintiff's charge that defendant deliberately hurt her when giving her her exercise and when helping her into her wheel chair is not sustained. We do not doubt that on occasions the exercises were painful and that plaintiff was hurt when her legs fell against the wheel chair, but it is clear, that at the time, plaintiff was satisfied of defendant's good faith because she permitted him to give her the exercises every day from December to April. The evidence does show that on one occasion the defendant told the plaintiff that he was "tired of polio in the head." There was considerable provocation for the remark. That fact, however, does not justify it. If the statement were one of a series of similar remarks or acts which established a course of conduct upon the part of the defendant, grounds sufficient for divorce might have been established. A single incident of this nature, however, or several unrelated incidents are not, in our view, the extreme cruelty re-

quired by statute as a ground for divorce. Husbands are not usually saints and an occasional unjustifiable outburst under provocation does not constitute extreme cruelty. 27 CJS (Divorce Sec 28) 554. It is our opinion therefore that the judgment of divorce must be reversed.

It is clear, however, that the mutual distrust and suspicion that exists between the parties to this suit will continue, at least for the present, that the parties will continue to live apart and that provision must be made for the maintenance of the plaintiff and for the custody of the children.

The judgment of the trial court awarded the custody of the older son to the father and the custody of the younger son to the mother. It provided that the children should be kept together during vacations and should spend half of each vacation with the father and half with the mother. It also provided for rights of visitation by both parties at all times. Each party has challenged this part of the judgment and demands the right to custody of both children.

At the present time the elder son is past six years of age and the younger son is almost five years old. The elder son has commenced school and the younger will enter school next year. In awarding custody of these children the paramount consideration is their welfare. Schlak v. Schlak, 51 ND 897, 201 NW 832; King v. King, 61 ND 422, 237 NW 854.

In this case none of the charges of unfitness to have the custody of children, commonly found in divorce cases, are made. The parties are both good people. They are industrious. They are active church members and the defendant is a successful farmer. Both parties want the children. The plaintiff thinks she should have them because she believes the defendant is emotionally immature. The defendant thinks he should have them because he believes the plaintiff is emotionally unstable. The testimony in the case tends to prove that the beliefs of both parties are in some degree justified. Neither seems to have been able to meet squarely the problems which plaintiff's tragic illness has presented. We find no basis for choosing between them upon this score. Plaintiff also urges that defendant should not

be given custody of the children because he does not believe in the strict regimen she considers essential to their welfare. The question posed by this contention is one we are not called upon to decide. It is one upon which child psychologists and pediatricians differ and each side has respectable adherents.

The memorandum opinion of the trial judge discloses that in awarding custody he considered the ages of the children, the desirability of keeping the brothers together, the abilities of the parties to assume the responsibilities of custody, the rights of the parties as parents and their devotion to the children. It was his conclusion upon a careful, reasonable and sympathetic consideration of all relevant factors that the interests of the children and of the parties would be best served by a divided custody. In the matter of awarding custody of children a large discretion is vested in the trial court and its decision thereon will be interfered with only where there is an abuse of that discretion. Nelson, Divorce and Annulment 2nd Ed 415; 2 Schouler, Marriage and Divorce, 6th Ed 2033; Sjol v. Sjol, 76 ND 336, 35 NW2d 797, 798. Here it is apparent that the trial court's discretion was painstakingly and reasonably exercised. The judgment with respect to custody will therefore be affirmed in its essentials.

Because of incidents which have arisen out of defendant's visits to his children, because of the suspicions of each party concerning the motives of the other and because there appears to be no immediate prospect of an improvement in their relations with each other, we are of the opinion that no absolute right of visitation should be granted to either party, but that visits should be made only when they are arranged and are mutually agreeable, or upon the further order of the district court. Neither party shall remove either child from the jurisdiction of the court without the consent of the other except upon the order of the district court.

The evidence disclosed that the defendant is a prosperous farmer. He owns real and personal property, cash and accounts receivable which at the time of the trial had a value in excess of $75,000.00. In addition plaintiff and defendant jointly owned

U. S. Savings Bonds of the value of $3,375.00 and a savings account in the amount of $5,457.00. These joint holdings were paid for entirely by the defendant. The defendant's net income for the years 1946, 1947 and 1948 was $10,136.64, $16,288.59 and $17,682.83 respectively.

The record shows that from the time the plaintiff moved the children to the home of her sister in May 1947 until December 31, 1948 or for a period of 20 months, the actual living expenses for her and the two children were over $6,300.00. Subsequent to December 31, 1948 the defendant put plaintiff upon an allowance of $175.00 a month.

The judgment of the trial court decreed that one-half of the jointly owned savings account in the sum of $2,728.50 and one-half of the jointly owned bonds in the sum of $1,687.50 be set over to George H. Long, trustee, and by him be held in trust for the plaintiff with the exception of the sum of $915.50 of the savings account which should be paid directly to the plaintiff. The judgment also decreed that the defendant transfer two quarter sections of farm land to George H. Long, trustee, to be held by the said trustee for the use and benefit of the children, Donald and Dale Henry. The judgment further provided that the defendant should pay to the plaintiff the sum of $175.00 per month for the maintenance and support of herself and Dale Henry; that defendant pay such medical and hospital bills as may be necessary for the treatment of the plaintiff including transportation to and from the place of treatment and an additional $25.00 per month for maintenance during the time of treatment.

There are only two provisions of this part of the decree which we believe should be modified. We see neither necessity nor advisability in requiring the defendant to convey a half section of land to a trustee for the use and benefit of his sons. At no time has he shown any unwillingness to make adequate provision for them. He has been successful, has saved and conserved his assets and in all probability will be better able to meet his family and other obligations, in good years and bad, if he retains title to his lands, the management thereof and the control of the

proceeds of the crops. We are also satisfied that the allowance of $175.00 per month to the plaintiff is inadequate. In view of the standard of living maintained by plaintiff and defendant when they lived together, in view of defendant's ability to continue to maintain that standard and in view of the present cost of living we are of the opinion that there should be allowed to the plaintiff for the support of herself and Dale Henry the sum of $300.00 per month from and after the entry of the judgment on the remittitur in this case. All expenses for treatment and transportation to the place of treatment incurred by plaintiff since the entry of judgment in the district court shall be paid by the defendant as provided therein, but ordinary expenses for such purposes shall thereafter be plaintiff's responsibility.

The trial court awarded plaintiff the sum of $800.00 for attorney's fees in district court. An additional award of the cost of the transcript and the sum of $400.00 has been allowed for the preparation of the appeal to the Supreme Court. Plaintiff contends that the amount allowed for attorney's fees in district court was inadequate. The trial of the case consumed eight days. Plaintiff says that $800.00 was just a fair fee for the trial and allowed nothing for preparation and expenses. The trial was held at Bottineau and plaintiff's attorneys live at Minot. Depositions were taken at Minot and New Rockford. We think the plaintiff's contention as to expenses has merit and we therefore hold that she should be awarded an additional $200.00 to cover expenses incurred in preparation for and during the trial. Plaintiff also asks an award of attorney's fees upon this appeal. That request is denied as the sum of $400.00 already allowed for this purpose is adequate.

The judgment of the district court is reversed and the case is remanded for the entry of a judgment in accordance with the views expressed in this opinion.

NUESSLE, C. J., and MORRIS and CHRISTIANSON, JJ., and WIGEN, Dist. J., concur.

BURKE, J. (On Petition for Rehearing) Plaintiff has petitioned for a rehearing. In her petition she asks us to reconsider

our conclusion that her appeal in this case required a review of the entire judgment. Plaintiff attempted to take a limited appeal. Her notice of appeal reads, "Plaintiff . . . appeals to the Supreme Court of the State of North Dakota from that certain judgment entered and filed herein on the 16th day of September 1949 in the District Court in and for the County of Bottineau and State of North Dakota, and plaintiff demands a trial de novo upon the following questions of said action:

(1) As to and upon the custody of the minor child Donald Roland Henry:

(2) Upon the division of property and amount of the alimony and support money allowed the plaintiff . . . ." In support of her contention that this court extended the scope of the appeal beyond the issues submitted she cites Section 28–2732 RC 1943, which provides among other things:

"A party desiring to appeal from a judgment in any such action shall cause a statement of the case to be settled within the time and in the manner prescribed by chapter 18 of this title, and shall specify therein the questions of fact that he desires the supreme court to review, and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court."

There is no question but that, under the provisions of the foregoing statute, an appellant may limit a review upon an appeal to specific questions of fact. This, plaintiff did not do. She asked a trial de novo in this court upon the issues of custody of the children and division of property. These are not issues of fact. That a trial anew of these issues requires a review of all of the issues of fact in the case needs no demonstration. The issues of the propriety of the divorce and that of the division of the property are so interdependent that a trial of the latter cannot be had without an examination of the former. As was said in Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519, "What (plaintiff) really contends for is a right to have a review of a portion of the judgment appealed from. This court has held that there can be no such thing as a trial de novo in the supreme court upon an appeal from a portion of a judgment, and there

are excellent reasons why an appellant cannot do indirectly, upon an appeal from a judgment, what he is not permitted to do directly by appealing from a portion of a judgment. See opinion by Young, Justice, in Prescott v. Brooks, 11 ND 93, 101, 90 NW 129. From the rule that there can be no appeal and trial de novo as to a portion of the judgment under Sec 7846 CL 1913, it must be accepted as a corollary that there can be no trial de novo in this court as to a portion of a judgment, where the whole is appealed from, except, of course, a partial review of questions of fact only." Section 28–2732 RC 1943, is a re-enactment of Section 7846, supra and that part of the section permitting a limited review of specified questions of fact appears in identical language in both enactments. We are clear therefore that in this regard we should adhere to the conclusion heretofore made.

Plaintiff also urges that our denial of a divorce divests this court of jurisdiction to make any order with respect to the custody of the children of the parties. In support of her contention she cites the case of Dallas v. Dallas, 268 NW 516, an Iowa case. The proposition is one on which there is no unanimity of opinion. It is our view that the better rule is that when parties come into court and submit the issue of divorce and the issue of the custody of the children, the court retains jurisdiction to adjudicate as to custody even though the divorce is denied. Stewart v. Stewart, 156 Fla 815, 24 So2d 529; Sauvageau v. Sauvageau, 59 Idaho 190, 81 P2d 731; Davis v. Davis, 194 Miss 343, 12 So2d 435; Kusick v. Kusick, 243 Wis 135, 9 NW2d 607; Urbach v. Urbach, 52 Wyo 207, 73 P2d 953; Ex parte Saul, 31 Cal App 382, 160 P 695; Jacobs v. Jacobs, 136 Minn 190, 161 NW 525, LRA1917D 971; Horton v. Horton, 75 Ark 22, 86 SW 825, 5 Ann Cas 91. Furthermore, section 14–0526, RC 1943 provides:

"Though a judgment of divorce is denied, the court in an action for divorce may provide for the maintenance of a wife and her children, or any of them, by the husband."

In California, Wisconsin and Minnesota, statutes, identical in substance and almost identical in language, have been construed as a statutory grant of jurisdiction to adjudicate as to the cus-

tody of the children of the parties to a divorce action even though the divorce is denied. Anderson v. Anderson, 124 Cal 48, 56 P 630, 57 P 81, 71 Am St Rep 17; Voss v. Voss, 157 Wis 430, 147 NW 634; Jacobs v. Jacobs, 136 Minn 190, 161 NW 525, LRA1917D 971. It is our conclusion therefore that jurisdiction existed to make the orders with respect to custody contained in the original opinion filed in this case.

Lastly, the petition asks for a clarification of what was said in the original opinion concerning the custody of the child, Donald Henry, and the allowances made to Gerda Henry. On these matters we think the original opinion is clear. However, we repeat that the custody of the older son, Donald, is awarded to the defendant, Roland Henry, such award to be effective from the date of the entry of judgment upon the remittitur from this court. With respect to the allowances made to Gerda Henry, the judgment of the district court is affirmed in all respects except that the award of $175.00 per month to Gerda Henry for the support of herself and Dale Henry is increased to $300.00 a month.

The petition for rehearing is denied.

CHRISTIANSON, and MORRIS, JJ., and WIGEN, Dist. J., concur.