[File No. 7161]

## MALINDA SAVRE, Appellant, v. EDWARD SAVRE, Respondent.

(42 NW2d 642)

Opinion filed May 12, 1950

*Day, Lundberg, Stokes, Vaaler & Gillig,* for appellant.
*Thompson & Duffy,* for respondent.

Morris, J. This is an action for divorce brought by Malinda Savre, aged 62, against her husband, Edward Savre, aged 76. The parties were married June 3, 1908. They have four children, the youngest being 30 years of age. All are married and have their own homes.

On February 8, 1949, judgment was entered in the District Court whereby it was "Ordered, adjudged and decreed that the plaintiff having failed to establish any cause of action for divorce, that her application for divorce be denied and said action dismissed with prejudice."

The judgment makes no mention of attorneys fees and expenses. Neither are they mentioned in the findings and conclusions upon which the judgment is based. Notice of appeal was filed June 11, 1949.

The defendant presented to this court the following motion to dismiss this appeal:

"The defendant and respondent herein, Edward Savre, moves this Court to dismiss the appeal from the judgment herein upon the ground and for the reason that subsequent to the entry of said judgment the plaintiff made and served notice of motion and motion to require the defendant to pay to the plaintiff the sum of $150.00 to cover attorneys fees and expenses incurred in connection with the trial of said action; that over defendant's objection, the trial court did require the defendant to pay to plaintiff the said sum of $150.00, for attorneys fees and expenses incurred in connection with the preparation and trial of said action, and which sum was so paid by the defendant to the plaintiff and accepted by her.

That said order was a modification or amendment of the original judgment entered herein; that by accepting such payment the plaintiff has waived her right to appeal from said judgment."

At the time the action was commenced an application for support, attorneys fees, and suit money in the sum of $200.00 was made before a judge of the District Court and an order to show cause obtained. Due to the illness of that judge no hearing was had and the application appears to have been abandoned. Subsequent proceedings were had before a different judge. After entry of judgment the plaintiff made a motion and application for

$150.00 attorneys fees and expenses incurred by the plaintiff and her attorneys in connection with the preparation for trial and the trial of the action. This matter was heard on April 12, 1949. The motion was resisted by the defendant upon the ground, among others, that it was not a motion to open or modify the judgment. On April 13, 1949, the court entered an order granting the motion and allowing the plaintiff $150.00. The order does not mention the judgment and does not purport to modify it in any way or incorporate in it by reference or otherwise the requirement of the order to make the payment.

The defendant argues that the order requiring him to pay attorneys fees and expenses of the trial in effect modified the judgment and that the acceptance by the plaintiff of the sum provided in the order amounts to a waiver of her right to appeal which entitles the defendant to a dismisal of the appeal to the Supreme Court. He relies on the cases of Boyle v. Boyle, 19 ND 522, 126 NW 229, and Tuttle v. Tuttle, 19 ND 748, 124 NW 429. In those cases this court held that where a divorce decree was entered awarding to the plaintiff a sum for attorneys fees and suit money but denying a divorce the unconditional acceptance of the sum awarded in the decree constituted an acquiescence in the judgment and a waiver of the right of appeal.

The facts in this case do not bring it within the rule of the cases above cited. The judgment awarded the plaintiff nothing. The money that she accepted was ordered to be paid to her by a separate and subsequent order which does not purport to amend the judgment and does not change or modify any of the terms thereof. The defendant has not challenged the order and has complied therewith. The plaintiff's acceptance of the amount allowed by the order does not affect her right to appeal from the judgment. The motion to dismiss the appeal is denied.

The plaintiff left the defendant in 1943 and has supported herself since that time. She has worked in various hospitals as a practical nurse. At the time the action was tried she was living temporarily with her oldest son, Eldred Savre, on a farm near that owned and occupied by the defendant. Since 1943 she has saved about $1500.00 from her earnings.

During the first years of their married life the parties lived in

the town of Hannaford where the defendant was engaged in business. In 1915 they moved to a farm in the vicinity which was purchased from the plaintiff's father who sold them the farm at a reduction of $1,000.00 or $2,000.00 in the purchase price, presumably as a gift or favor to the young couple. Part of this farm was lost through foreclosure. The remainder consisting of 309 acres the defendant now owns free from debt. It is worth about $12,000.00. He also owns a set of farm machinery including a tractor for which he recently paid $2,260.00, and a half interest in a combine. On July 23, 1948, the defendant withdrew from the Security State Bank of Hannaford the sum of $14,678.57, being the amount then in his checking account. Thus the defendant appears to be in comfortable financial circumstances. This is due largely to the good crops and the high prices for farm produce that has prevailed during the last ten years. Prior to that time the parties were not so prosperous. During the drought and depression years of the 1930's the income of the parties was meager and their living conditions approached those of hardship.

The plaintiff seeks a divorce upon the ground of extreme cruelty which Section 14–0505 RCND 1943 defines as "The infliction by one party to the marriage of grievous bodily injury or grievous mental suffering upon the other." The plaintiff complains of no physical injury but charges that the defendant treated her during their entire married life in a manner that caused her great mental suffering. The trial court found that the plaintiff failed to establish this charge by sufficient and satisfactory evidence and denied her a divorce. The plaintiff then moved for a new trial which was also denied. She appeals to this court from the judgment and decree denying her a divorce and also from the order denying a new trial. The case is here for trial de novo.

The plaintiff testified that during their married life the defendant failed to provide sufficient money to furnish the house and maintain it. She worked out for people in the neighborhood and raised turkeys. With the money thus procured she usually bought clothes for herself and the children. Some of this money also went to pay for food. The defendant did not buy sufficient

groceries to feed the plaintiff and his family. The children were poorly clothed. She had to buy bedding, linoleum for the floor, lamps, and everything needed for the home. The house on the farm was very cold in winter. She also testified that the defendant's behavior toward her was not too bad. He never complained about the way she kept house. He didn't like it because she couldn't go out and work in the fields and shock like other women did. During the summer she did the cooking for the farm laborers. He did not like company but he did not forbid her to invite her friends to the house. He never took her on a vacation although he made trips by himself. He served as a member of the North Dakota Legislature from 1931 to 1933 and made a trip to Bismarck every other year during that period. He later served as an employee of the House of Representatives. He told the plaintiff about taking a stenographer out for dinner while he was attending the legislative session, and brought her picture home and placed it on the piano.

The defendant emphasizes the hard times through which they lived during most of their married life. He contends that he did the best he could to support his family. He claims that she was improvident and did not do her share of work around the farm.

The defendant emphasizes his wife's mental instability and blames that for most of the trouble. He testified "When she was in her right mind and right mood she would be all right. Sometimes she would get off a little. She is just a little shaky in the head all of the time." It is undisputed that the plaintiff had a nervous breakdown during the early years of married life. In 1939 the plaintiff, on complaint of the defendant, was committed to the State Hospital for the Insane for a short time. After which, she was paroled to a sister in Montana for approximately five months. After that she returned to live with her husband. She does not appear to have had any mental difficulty thereafter. She testified that the defendant's attitude was unpleasant after her return and that they had arguments once or twice but never quarreled very much. Her most serious accusation against him is that he threatened to take her back to the State Hospital and said or inferred that she was mentally unbalanced, and that his attitude and statements caused her great grief, worry, and men-

tal suffering. There is no intimation that the plaintiff was improperly committed to the State Hospital and the evidence shows that she was transported to the institution by her husband and a grown son. She blames her mental difficulties upon her unpleasant life with the defendant. Much of her testimony is uncorroborated.

Avery Savre, the youngest son, testified for the plaintiff. Most of his testimony deals with the financial condition of the defendant and in addition he offers in a general way some corroboration of the plaintiff's testimony. He says that his mother was a good housekeeper and took good care of the children. He appears to have been somewhat reluctant to testify regarding conditions in the home. When questioned about the necessaries of life he said "Well, we ate." Regarding his father's reluctance to make purchases he said "He didn't want to buy anything unless he had to." And in reply to a question as to whether the defendant was considerate of the plaintiff during the period prior to her commitment to the State Hospital he said "I don't think he went out of the way any." He testified that his father made derogatory remarks about the children and that "If she said anything that wasn't just right then he would say she was crazy right away."

The oldest son, Eldred Savre, was called as a witness by the defendant and testified reluctantly. He and his wife had lived in his parent's home for a period of twelve years that ended shortly prior to the trial. He said that the relationship between his father and his mother was not friendly and "The biggest reason, I suppose, was the difference in their ages for one thing." Both of them did fault-finding.

This record presents an unusual situation in domestic affairs. The plaintiff and defendant lived together as husband and wife for over 35 years in the same community and maintained a home in a small town and on a farm. They raised a family of four children. During practically all of that time the family relationship was inharmonious. A clash of personalities permeates this entire record. He disliked to spend money and preferred a severely simple life. She sought to use money to purchase the pleasures of living from day to day. Yet he was not a miser,

neither was she a spendthrift, but their differences in viewpoint with regard to money matters and mode of living were constant sources of irritation which at times flared into discord. Despite this situation there seem to have been few, if any, violent quarrels. She complains of a lack of fuel, clothing, and bedding, as well as insufficient food. On the other hand, he maintains that the family was supplied with adequate family necessaries, except when drought and depression forced a general lowering of the standard of living throughout the neighborhood. The record does not disclose that the situation between the plaintiff and defendant became appreciably worse prior to her quitting the family home. Their oldest son, his wife and two children, were then living with the plaintiff and defendant. The defendant testified "She wouldn't stay home on account of the children. She told me time and again it made her nervous." On this point the record discloses the following testimony by the plaintiff:

Q: Why did you wait until 1943 to finally leave?

A: I stayed with him on account of the children. Until they grew up so they could take care of themselves.

Q: You heard Mr. Savre testify as to your complaining of the oldest son's children?

A: Well, we lived with them. It wasn't always so pleasant.

The record establishes that the plaintiff and defendant were incompatible. But incompatibility is not a ground for divorce in this state.

In Mosher v. Mosher, 16 ND 269, 113 NW 99, this court said "A continuous course of fault-finding, threats, and other acts, intended to aggravate and annoy the other party to a marriage, though each act is trifling in itself, may cause such a degree of mental suffering as to constitute a ground for divorce on the charge of extreme cruelty." The rule thus stated does not apply to the facts in this case. It does not appear that the defendant intended to aggravate and annoy the plaintiff, or for that matter, that she intended to annoy him. The annoyances, if such they may be called, arose from differences in viewpoint and personality, and these in turn gave rise to irritations and disagreements. They no doubt resulted in mental discomfort but to say

that they amounted to grievous mental suffering and extreme cruelty is to extend the divorce statute beyond its intent.

The nearest approach to a ground for divorce is reached by the plaintiff in her testimony that the defendant threatened to take her back to the State Hospital, and said or inferred that she was mentally unbalanced. But she also said that after her return from the hospital they had arguments once or twice but never quarreled very much. Neither does she state whether the incident which she refers to occurred more than once. She returned during the first part of 1940 and did not leave the defendant until October, 1943. The oldest son and his family lived with the parents during that time. He paid for most of the food and groceries and the family life does not appear to have been one of want, hardship, or discomfort in a physical sense. Nor were the conditions such as to bring about grievous mental suffering.

But one remaining question requires further consideration. And that is the defendant's references to the plaintiff's mental condition. The defendant denies that he ever told his wife that she was crazy. But if we resolve this conflict of testimony in favor of the plaintiff it still does not establish that the trial court erred in refusing her a divorce on the ground of extreme cruelty. Her testimony discloses no particularities or circumstances surrounding the statement. Charges of insanity or mental instability have been considered and given weight in divorce actions when shown to have been a part of a course of conduct pursued with an ulterior motive or coupled with other instances of abusive treatment. Charges of insanity when appearing as isolated instances and unconnected with other facts tending to establish cruelty have generally been held to be insufficient. Michels v. Michels, 120 Me 395, 115 Atl 161, 18 ALR 570 and note. 17 Am Jur Divorce and Separation, Sec 67, 27 CJS Divorce, Sec 28. We cannot find in this record evidence of a course of conduct on the part of the defendant designed to inflict grievous suffering upon the plaintiff. We do not doubt but that the defendant at times was uncongenial and disagreeable. On the other hand, the plaintiff had a tendency to be nervous and irritable. It is

not clear that she left home in 1943 because of any particular misconduct or abuse on the part of the defendant.

The trial court found that the plaintiff failed to establish by sufficient and satisfactory evidence a cause for divorce. Our examination of the record leads us to the conclusion that his finding was not erroneous but it does not follow that she should be ·denied all relief.

The plaintiff in her complaint asked for a divorce, a division of property and support. The matter of the plaintiff's support does not appear to have been considered by the trial court. Section 14-0526 RCND 1943 provides: "Though a judgment of divorce is denied, the court in an action for divorce may provide for the maintenance of a wife and her children, or any of them, by the husband." See also, Retterath v. Retterath, 76 ND 583, 38 NW2d 409; Tank v. Tank, 69 ND 39, 283 NW 787; Pulkabek v. Pulkabek, 48 ND 243, 183 NW 850; Hoellinger v. Hoellinger, · 38 ND 636, 166 NW 519. The record appears to present in considerable detail the financial history and present financial condition of the parties. We would not leave the 62-year-old plaintiff to the choice of supporting herself or returning to a · home from which all affection has fled and not even mutual respect remains. Justice requires that the matter of the support of the plaintiff be considered and determined before final disposition is made of this appeal. It is proper that the determination of this question be first made by the trial court. The record is remanded to the district court with instructions to consider the matter of the support of the plaintiff upon this record and upon such further showing as he may in the exercise of judicial discretion permit the parties to make. Whereupon the trial court shall recertify and return the whole record to this court, and include therein his findings and determination with respect to the plaintiff's support.

Upon the motion for new trial the plaintiff specified a number of errors at law in connection with the admission of evidence, some of which are well taken and if this had been a case that was tried to a jury the granting of· a new trial would be imperative. The case was tried to the court and is· before us for a trial anew. The fact that inadmissible evidence was admitted over objection

does not under the circumstances disclosed by this record require us to order a new trial and it does not appear to us that a retrial of the case should be had in furtherance of justice.

The order denying a new trial is affirmed, and the case is remanded for further proceedings in accordance with this opinion.

NUESSLE, C. J., and BURKE, CHRISTIANSON and GRIMSON, JJ., concur.