[File No. 7322]

HILDA MATTSON, Plaintiff and Respondent, v. EINO MATT-
SON, Defendant and Appellant.

(56 NW2d 764)

Opinion filed January 14, 1953

*Ella Van Berkom,* for appellant.
*Stormon & Stormon,* for respondent.

SATHRE, J. This is an action for divorce brought by the plaintiff Hilda Mattson against the defendant Eino Mattson. They were married in July 1929 and ever since their marriage have resided in Towner and Rolette Counties and have been engaged in farming. They have four children, Vida Mattson, born April 7, 1931, Jeanette Mattson, born March 17, 1934, Delmer Mattson, born May 8, 1936, and Carol Mattson, born May 10, 1943. They have been fairly successful as farmers, and own a section of land in Towner County valued at approximately $20,000.00; machinery and equipment of the approximate value of $20,000.-00, a house in the City of Rolla of the value of $8000.00 or $8500.00 and other assets of the value of $15,000.00 to $20,000.00. The farm land is clear, but the farm machinery is encumbered by mortgages, which together with other bills and accounts payable amount to approximately $30,000.00.

The action for divorce was commenced in July 1949. The complaint alleges extreme cruelty and demands judgment for an absolute divorce, for the care and custody of the minor children, and for support alimony and attorney's fees.

The defendant answered denying the allegations of extreme cruelty and demands judgment for the dismissal of the action.

By stipulation of the parties the case was heard at Devils Lake, North Dakota on December 6, 1950, before the Honorable Roy A. Ilvedson, who was designated as trial judge. The trial continued through December 7th, when both sides rested and an adjournment taken until further notice from the attorneys of the parties. It was agreed that during the adjournment the defendant was to procure certain bank statements and other items with reference to his financial affairs to be submitted to the trial court.

Thereafter by stipulation of the parties, the case was reopened and the trial continued at Rugby, North Dakota on October 18, 1951. The parties were permitted to serve and file amended or supplemental pleadings. The supplemental complaint alleged that on the 28th day of August, 1951, at Sebeka, Minnesota the defendant committed assault and battery upon the plaintiff and was convicted before O. F. Utternack, a justice of the peace of Wadena County, State of Minnesota. Defendant's supplemental

answer admits that he was convicted as alleged, but alleges that in fact he was not guilty of said offense, but that he entered a plea of guilty in order to avoid delay in returning to North Dakota to take charge of harvesting operations on his farms.

The supplemental answer further alleges that on April 27, 1951, the plaintiff gave birth to a female child at a hospital at Park Rapids, Minnesota and that one Edw. Seigel is the father of said child. There is no dispute as to the truth of this allegation as the plaintiff admitted it in her testimony, and it is further admitted in the record by written stipulation by counsel for both parties.

The trial court held the evidence adduced by the plaintiff was insufficient to establish extreme cruelty under the statute to warrant the granting of a decree of divorce, but granted to the plaintiff a decree of separation from bed and board, forever, from the defendant Eino Mattson, and ordered a property settlement between the parties in the proportion of 40 per cent to the plaintiff and 60 per cent to the defendant; that according to the valuation as found by the court the plaintiff was entitled to $18,830.00; that defendant was entitled to credit upon said sum of $18,830.00 for all sums of money he paid to the plaintiff since the commencement of the action at the rate of $150.00 for each $200.00 payment made by him, the court determining that $50.00 of each $200.00 payment made was for support of the children and that therefore the defendant was entitled to credit only at the rate of $150.00 for each $200.00 monthly installment made; that the said sum of $18,830.00 be paid in installments over a period of years and that the section of land owned by the defendant should be impressed with a lien until the total sum so awarded to the plaintiff is paid with interest at the rate of 3% per annum. The court further held that the defendant should pay the sum of $35.00 per month for each of the children Jeanette Mattson and Carol Mattson until they arrive at the age of majority, subject to the further order of the court, and should the son Delmer Mattson later live with the plaintiff, then the defendant should pay for his support such sums as may be awarded by the court. The court further held that the plaintiff be awarded the care and custody of the two minor children Jeanette and Carol Matt-

son and that the defendant be awarded the care and custody of son Delmer Mattson, subject to further order of the court.

Judgment was entered accordingly.

The defendant appealed from the judgment directing a division of the property and impressing a lien upon the real estate and demanded a trial de novo.

Where an appeal is taken from a judgment in a divorce case and a trial de novo is demanded it becomes necessary to review all of the evidence including the conduct of the parties which it is claimed constitutes grounds for divorce. In the case of Hoellinger v. Hoellinger, 38 ND 638, 166 NW 519, we said:

"It is the manifest duty of this court, upon an appeal of this character, to review the entire record for the purpose of disposing of the case according to the provisions of the statute under which the appeal is taken, and in divorce cases this duty rests upon the court regardless of the desires of counsel or parties that, if possible the case be disposed of without affecting the judgment of divorce . . . . Where a retrial is had to this Court . . . and where it is not limited to specific questions of fact the entire record is here for review for the purpose of enabling the court to enter such judgment as is appropriate on the whole record."

And in the case of Henry v. Henry, 77 ND 845, 46 NW2d 701, we said:

"While neither party has challenged that part of the decree which granted the divorce, both have demanded a trial de novo upon questions which require a consideration of all of the evidence in the case. That is to say: a trial de novo upon the questions of custody and allowances cannot be had unless we view all of the evidence concerning all of the acts of the parties including those which it is claimed afford grounds for the divorce. Such a view of necessity brings into focus all of the issues in the case. These demands therefore open the entire judgment to review."

It will be necessary therefore to review the evidence and the entire record in order to determine the issues involved and the rights of the parties.

The parties were married in 1929. They were engaged in

farming in Towner County. They were thrifty and accumulated considerable property, real and personal. The defendant appears to have been a good provider, and the plaintiff and children were well dressed and otherwise well provided for. He purchased a modern house in the City of Rolla and bought new furniture. They lived in this house during the winter months. The house on the farm appeared to be adequate and compared favorably with the average farmhouse in that community. Both parties were industrious and the plaintiff assisted with the usual farm chores.

The plaintiff was born in Minnesota and she would make visits to her parents and relatives there once and sometimes twice a year with the approval of the defendant.

The evidence does not disclose any serious disagreement or trouble between the parties until sometime prior to June 1949. On June 17, 1949 the plaintiff left the defendant, and since that time they have not cohabited as husband and wife.

The plaintiff testified in substance as follows:

During the past five years the defendant called her vile names and used profane and abusive language toward her both in public and in the house; several neighbors and friends of the parties were called as witnesses but none of them had ever heard defendant call plaintiff vile names or use profane language toward plaintiff, except a brother of plaintiff. His testimony was rather absurd and was of little weight. The daughter Vida was called as a witness for the plaintiff but gave no testimony of having heard the defendant, her father, use profane and abusive language towards plaintiff. The other children were not called as witnesses by either party in regard to this matter.

In 1946 the defendant pushed her against a door and broke her shoulder, she fainted and her daughter Vida had to dress her. This incident was not corroborated by Vida. The plaintiff stated that she went to see Dr. Toomey at Devils Lake the next morning about her stomach ulcers but it does not appear that she made any complaint about her "broken shoulder". The doctor was not called as a witness.

On the morning of June 17, 1949, the morning she left the de-

fendant, he came into the bathroom and ripped off her house coat and "kept on tearing it". She said their son Delmer told the defendant to leave her alone, and that the defendant then walked out. The house dress was not introduced in evidence, although she admitted she still had it in the "rag box"; plaintiff testified further that the defendant made excessive demands upon her for marital relations while she was ill, that she consulted doctors and was advised that she should not have intercourse so frequently. From the evidence it appears that the last time she consulted a doctor in regard to this matter was in 1946.

The defendant denied specifically that he had used profane and abusive language toward plaintiff and that he had called her vile names. He also denied that he committed the acts of violence testified to by the plaintiff. With reference to plaintiff's complaint that he made excessive demands for marital relations when she was ill the defendant testified that he talked with the doctor whom the plaintiff had consulted in the matter and that the doctor told him there was nothing to stop or prevent plaintiff from having marital relations with the defendant. The doctor was not called as a witness for either party.

At the second hearing held on October 18, 1951, the plaintiff testified that on August 28, 1951, at Sebeka, Minnesota, defendant committed assault and battery upon her and that he was convicted thereof in justice court. The plaintiff, her daughter Jeanette and one Grangruth testified to the circumstances that culminated in the charge of assault and battery. The plaintiff testified that the defendant threw a chair at her. The witness Grangruth testified that on the day this incident took place the defendant had been drinking. He followed the plaintiff about the room and was talking to her. He reached for her several times. The witness was of the impression that both parties were "mad" but their conversation was in a normal tone and no shouting except a few times. He did not even recall any swearing, but that the defendant "touched her a few times", and that the defendant picked up a chair and threw it on the floor. The defendant finally put his arms around the plaintiff's neck. The

defendant was not using his hands or choking her. He was "sort of hugging her". His arrest followed.

Defendant's version of this affair is that he had been driving all night having come from the farm in North Dakota, and arrived at Sebeka about 7:30 in the morning. He had a few drinks, went to the barber shop and had a shave, and then went to the house occupied by the plaintiff and then to plaintiff's sister's place. Then he went to Menanga to get some medicine, and then back to Sebeka. He took a few drinks so he could stay awake. He intended to go back to Rolla that afternoon. He said he did put his arms around the plaintiff and wanted to kiss her good bye and then was arrested. He said it was all "a put up deal". He said he had his arms around plaintiff when the policeman came and arrested him, and took him and put him in jail. He was anxious to get back to his harvesting operations and in order to get back as soon as possible he pleaded guilty. Whatever the intention or purpose of the defendant may have been in enacting his part of this scene, the fact is that the plaintiff was not harmed in any way and did not appear to have been in any danger at any time. She had the protection of the witness Grangruth who was present during the whole affair. He was a young man nineteen years of age, 5 feet and 11 inches tall and weighed 176 pounds. It may only have been a coincidence but a policeman also appeared on the scene when the defendant was leaving and had his arms around the plaintiff.

The defendant, testifying in his own behalf, admitted that he had faults, although he did not disclose what the faults were. He stated that he still loves his wife and that "she is the best woman in Towner County". He wanted her and the children to come back and live with him as they had before. The plaintiff, however, stated she had lost all love for the defendant and would not come back to him. Defendant stated that he was willing to take all their children back and support and take care of them, even though his wife was not willing to come back and he would also be willing to make monthly payments for the support of his wife.

The trial court found that the plaintiff had failed to establish a cause of action for divorce on the grounds of extreme cruelty.

We have carefully considered the entire record and we conclude that the trial court's findings in this respect were not erroneous.

The trial court made a further finding that the plaintiff was entitled to a decree of separation, forever, from bed and board, and also that she was entitled to a division of the property. This finding was clearly erroneous. A decree of separation from bed and board and for a division of property may not be granted unless the evidence is sufficient to establish a cause of action for divorce. Section 14–0601 NDRC 1943, provides:

"A decree of separation from bed and board, forever, or for a limited time, may be decreed by a district court of this state, upon such evidence as shall be deemed sufficient, on complaint of a married woman or a married man, for any cause for which a divorce might be decreed."

Section 14–0603 NDRC 1943 provides:

"Upon decreeing a separation, the court may make such order and decree for the suitable support and maintenance of the wife or husband, and children, if any, out of the separate or joint property or separate property of the husband and wife, as may be just and proper."

Construing said Sections 14–0601 and 14–0603 together, it is clear that a decree of separation from bed and board may not be granted unless the evidence would warrant the granting of a decree of divorce. In the case of Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519, we said:

"That portion of the judgment which distributes the property hinges directly upon the part which dissolves the marital status. This action is not brought to determine the separate property rights of the plaintiff and defendant, and there is no action known to the law whereby one spouse may obtain a sparate interest in the property of the other while the marriage tie continues. While our law recognizes that there may be a suit for alimony and separate maintenance, independent of proceedings for divorce . . . the judgment, in so far as it affects the property of the defendant, can do no more than charge it with a lien for the payment of such alimony or maintenance. It is worthy of note in this connection that Section 4401 C.L. 1913 (14–0526 NDRC 1943) makes express provision for the allow-

ance of maintenance in a divorce action where the divorce is denied, and that this section is entirely silent upon the matter of property divisions."

"Section 4405 C.L. 1913 (14–0524 NDRC 1943) provides expressly for a distribution of the property when the divorce is granted. Since there is no proceeding known to the law wherein there may be a distribution of property between a husband and wife, based upon their inability to continue the normal marital relations, the manifest implication of the foregoing statutes is that there can be no property distribution, unless there be a judgment or decree of divorce."

And in the case of Novak v. Novak, 74 ND 572, 24 NW2d 20, we said:

". . . . Plaintiff sued for a divorce on the ground of extreme cruelty on the part of the defendant. The defendant took issue with the allegations of the complaint, and counter claiming, asked for separation on the grounds of willful desertion and neglect. The court found for the defendant that there was no cruelty on her part and that there were both desertion and neglect on the part of the plaintiff. Though entitled to a divorce the defendant had conscientious scruples against divorce and instead asked for a decree for separation, which the court granted her.

In any event, the court could not have done other than deny the plaintiff's prayer for a divorce. Had the defendant not asked for affirmative relief, the judgment which needs must have been entered would have been final and conclusive against the plaintiff though the parties forever after continue to live separate and apart."

It must follow therefore that under the evidence and the law, Section 14–0601 and the decisions cited, the trial court did not have the right to enter a decree of separation from bed and board and to make a division of the property.

Although under the pleadings and the evidence the plaintiff is not entitled to a division of the property, she is nevertheless entitled to support and maintenance for herself and minor children. Section 14–0526 provides:

"Though a judgment of divorce is denied, the court in an

action for divorce may provide for the maintenance of the wife and her children or any of them by the husband." Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519; Savre v. Savre, 77 ND 242, 42 NW2d 642.

The plaintiff is now 39 years old and the defendant is 47 years old. They were married in 1929, they settled on a farm in Towner County, North Dakota. Through their joint efforts they accumulated considerable property which is described in detail elsewhere in this opinion.

There are two minor children, Delmer Mattson of the age of 16 years and Carol Mattson of the age of 9 years. It appears that it is the wish of the son Delmer Mattson to continue to live with the defendant at the farm home in Towner County and that Carol Mattson will be with her mother the plaintiff. This arrangement is agreeable to both parties. The other two children Vida Mattson and Jeanette Mattson are both of age and need not be considered here. The plaintiff is living in Sebeka, Minnesota, in a rented house for which she is paying $33.00 per month. She has no separate property of her own and is without any means of support. Some provision should therefore be made for her support and maintenance as well as for the support of her minor daughter Carol Mattson who is in her care and custody. The determination of there questions is properly first to be made by the trial court. Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519; Savre v. Savre, 77 ND 242, 42 NW2d 642.

The record is remanded to the district court with instructions to consider the matter of support of the plaintiff and the minor children, Carol Mattson and Delmer Mattson, and an allowance for attorneys' fees in district court, upon this record and upon such further showing as he may in the exercise of judicial discretion permit the parties to make, and order the entry of judgment accordingly.

The case is remanded for further proceedings in accordance with this opinion.

Morris, C. J., and Burke, Grimson, and Christianson, JJ. concur.