Stella ALBRECHT, Plaintiff and Respondent,

v.

Chris ALBRECHT, Defendant and Appellant.

No. 7743.

Supreme Court of North Dakota.

Oct. 30, 1958.

Paul L. Agneberg, Cando, W. A. Jacobsen, Watford City, for appellant.

John B. Hart, Rolla, Duffy & Haugland, Devils Lake, for respondent.

SATHRE, Judge.

This is an action for divorce brought by Stella Albrecht against the defendant Christian Albrecht. They were married at Rolla, North Dakota, in June 1950 where they lived together until March 1954. Two children were born to them, Linda Lou born

October 17, 1951, and David Lonny, born March 7, 1954.

The complaint charges the defendant with extreme cruelty consisting of slanderous statements by the defendant to, of and concerning the plaintiff and members of plaintiff's family to the friends of the plaintiff and that on the 13th day of March 1954, the defendant slapped the person of plaintiff. The complaint further alleges that the plaintiff is a good and proper person to have custody of the children born to plaintiff and defendant and that the defendant is unable to care for the said children because of the nature of his work; that the defendant is an able bodied man, a carpenter by trade, that she does not know the amount of the annual income of the defendant but is informed and believes that his annual income is in the sum of $3,000 a year.

Judgment is demanded for an absolute divorce and for care and custody of the minor children and for weekly payment to plaintiff of $25 a week for her and said minor children and for the sum of $75 attorneys fees.

The defendant answered denying the allegation of cruelty and by way of affirmative answer alleges that for the last fifteen months prior to the commencement of this action the plaintiff pursued a course of extreme cruelty toward the defendant which had seriously impaired his health.

Judgment is then demanded for dismissal of the action.

Thereafter the defendant filed an amended answer alleging extreme cruelty on the part of the plaintiff, and demanding judgment for an absolute divorce from the plaintiff and that he be awarded custody of the minor children.

This action was commenced on the 11th day of May 1954, and on the 22nd day of May 1954 at Rugby, North Dakota, the parties and their respective attorneys appeared in district court upon motion of the plaintiff for temporary custody of the children and support for the plaintiff and the said children during the pendency of the action. After hearing the district court made its order awarding the temporary custody of the children Linda Lou and David Lonny to the plaintiff subject to the right of the defendant to visit such children between the hours of one o'clock and five o'clock on Sundays, and it was further ordered that the defendant pay to the plaintiff as temporary support money for herself and such children the sum of $22.50 on or before Saturday of each week during the pendency of the action, and that the defendant pay the attorney for the plaintiff the sum of $75 as temporary attorneys fees and court costs in the sum of $35 to be paid on or before the 21st day of June 1954, and the sum of $40 on or before the 19th day of July 1954.

On July 2, 1954, on application of the defendant the foregoing order was modified to the extent that the said sum of $35 which was to be paid on or before the 21st day of June 1954 should be paid the attorney for the plaintiff on or before the 6th day of July 1954.

The divorce action was tried to the court without a jury at Rolla, North Dakota, on July 9, 1954. Judgment was rendered August 25, 1956, granting the plaintiff a divorce and custody of the children and requiring the defendant to pay plaintiff $20 per week for her support and support of the children and in addition thereto extraordinary expenses for hospital and medical care of the children, and $200 for attorneys fees and other accrued expenses. The judgment further provided that a certain lot or parcel of land in the City of Rolla owned by defendant shall not be encumbered by the defendant.

At the close of plaintiff's case the defendant made a motion for a dismissal of the action on the grounds that the plaintiff had failed to establish a cause of action; that there was no corroborating evidence of the alleged cruel treatment charged by the plaintiff and that the defendant was entitled

to an order of dismissal of the action. The motion was resisted by the plaintiff and denied by the court.

The defendant was called by the plaintiff for cross examination under the statute. He denied specifically that he was guilty of any cruel treatment of the plaintiff. On the contrary he testified that the plaintiff had accused him of affairs with other women, and that she specifically told him that she did not want to go out with him or wanted to be seen with him and that he was too old for her. He stated further that plaintiff had slapped him many times on his ear drum; that she had kicked him without any reason; that she had used vile and abusive language toward him and that on occasions she had threatened to kill him. The defendant had previously been married and had a boy by his first marriage Jerome Albrecht, who at the time of the trial was approximately 12 years old. Defendant testified that in January 1954, on a cold night about 8:30 in the evening, the plaintiff told the boy Jerry to empty a certain waste paper basket and that the defendant suggested that it could be put off until the next day. He stated that at the time the plaintiff lost her temper; that she got up and slapped the boy vigorously and that she grabbed their wedding picture which was in a frame and glass and threw it at the defendant and their little daughter Linda; that she missed them but that the picture struck the wall and that the glass broke to pieces and that one piece of the glass bounced back, struck him and cut his ear. The defendant testified further that on Valentine's Day in 1953 he brought his wife a large Valentine box of candy; that in a fit of temper she broke it over his head and the candy was scattered all over the floor. The record shows that on March 19, 1954, the plaintiff signed a complaint before a Justice of the Peace, on the advice of her attorney, charging the defendant with having slapped plaintiff's wrist. The complaint was introduced in evidence, but on stipulation by the parties it was restored to the files of the Justice of the Peace and is not in the record before us. On the day the complaint was signed the plaintiff's mother, an aunt, and a friend from St. John, the Justice of the Peace, a Rev. Mr. Brown, and the Sheriff of Rolette County and others had gone to the home of the parties in the absence of the defendant; the plaintiff swore to the complaint before the Justice of the Peace at that time. No hearing was ever had on this complaint. The defendant pleaded not guilty in justice court. The plaintiff as complaining witness made no appearance and evidently further proceedings in the case were abandoned.

The plaintiff testifying in her own behalf stated that the defendant had accused her of having affairs with other men; that he had locked the door of their apartment in order to prevent her from going to her parents at St. John. She stated that on one occasion some of her friends came to the apartment and offered to take her with them to her home at St. John; that the defendant was there and locked the door; that a sister of the plaintiff called the sheriff and that the deputy sheriff then arrived but took no action, and that plaintiff left with her friends without any further interference by the defendant. She stated that at one time the defendant and she had some difficulties about the birth certificate of their second child, concerning the name to be given the child. They got into an argument and that he grabbed her by the shoulders and pulled her out of the kitchen. She testified further that he had slapped her many times and that the boy Jerry was present and saw the defendant slap her. She admitted throwing the picture at her husband as testified to by the defendant, but claimed it was done on provocation by the defendant. In this connection she testified as follows:

"Q. Did you throw that picture at your husband? A. Yes.

"Q. Did you hit him? A. No.

"Q. Will you tell the court what happened previously and why you

threw the picture etc? · A. Chris's brother, Herman gave me $10.00 to give to Chris. Chris had gone to church; I put it in my small cedar chest. That evening when he came home I was in the bath room. He asked about it and I said I would get it for him as soon as I was through. Instead of that he searched my bureau drawers; that made me angry. He slapped me and the picture was the nearest thing so I picked it up and threw it at him.

"Q. Were you mad enough at the time that you wanted to hit him with it? A. Yes."

She testified further as follows:

"Q. Is it true Mrs. Albrecht that during your married life that three, four or five times you have slapped your husband or have hit him? A. I would say yes.

"Q. And on each of these occasions had he done things to you which in your opinion justified such action? A. Yes, he did.

"Q. Did you ever kick him first? A. I did once.

"Q. And then what happened? A. He kicked me back.

"Q. Do you regret that you kicked him? A. No, I don't.

"Q. If you were in the same position with the same aggravation would you kick him again? A. Yes, I suppose I would."

It appears that she had started an action for divorce in 1952 but when the case was on trial a reconciliation was effected and their marriage relation was fairly harmonious except during plaintiff's second pregnancy.

The plaintiff gave birth to her second child on March 7, 1954. She remained in the hospital until March 12, 1954, and then returned to their home, where she remained until March 19th. It appears from the evidence that the plaintiff was more or less irritable during her last pregnancy, and there was considerable friction between the parties during that time. She refused to live with the defendant after the birth of her second child and on the 20th of March 1954 her parents came from St. John, packed up some of her belongings and took her to their home, and she has not lived with the defendant since that time.

Jerome Albrecht, defendant's son by a former marriage, was called as a witness and was sworn to testify. He was about 12 years old at the time of the trial. The trial court explained to the boy in detail the meaning and significance of taking an oath to tell the truth. The boy seemed to be intelligent and apparently understood the nature of an oath as explained to him and that it would be wrong for him to tell anything except the truth.

After discussion between the court and both counsel the court dictated the following stipulation into the record:

"The Court: It is stipulated and agreed that the court may talk privately with Jerome Albrecht covering these matters you have suggested and any other that seems pertinent to the court, and to give such consideration and weight to the matters submitted as in the court's opinion they deserve.

"Mr. Agneberg: Agreed.

"Mr. Hart: Agreed."

"The Court: In other words it will be treated as testimony in this case.

"Mr. Agneberg: That is right.

"Mr. Hart: That is right."

In this connection the attorney for the defendant submitted or rather requested that the court should make inquiries of the witness Jerome Albrecht respecting fifteen specified incidents relative to arguments and altercations all of which had been testified to by the parties.

Likewise the attorney for the defendant requested that the court should make inquiries with reference to three incidents which had been testified to by the parties.

By consent of both parties it was stipulated that the testimony of Jerome Albrecht as elicited by the trial court should be treated as testimony in the case. The testimony of Jerome is not in the record and it is not shown whether his testimony was taken down by a reporter when he was examined by the trial court. The only reference in the record to the testimony given by Jerome Albrecht is the following language in the trial court's memorandum opinion:

"When the trial court by mutual consent of every one concerned discussed the matter with the 12 year old Jerry, the boy indicated that on the whole he was kindly treated by his stepmother and got along quite well with her. His own feeling was that when there had been difficulty between himself and his stepmother they were such as normally arise between a child and parent."

Both parties relied on the testimony of Jerome Albrecht as corroborating evidence of the acts of cruelty to which they had testified. The case is here for a trial de novo, and therefore the testimony of Jerome Albrecht is an essential part of the record which necessarily would have to be considered in determining the question as to whether there was corroboration of the testimony of the plaintiff.

However, upon the record before us we do not consider it necessary to determine whether there was corroboration of the testimony of plaintiff. The defendant assigns as error the trial court's denial of defendant's motion for dismissal of plaintiff's action on the ground of recrimination by the plaintiff.

The evidence shows that the plaintiff freely admitted that she had slapped the defendant on several occasions; that she had kicked him; that she deliberately threw the framed wedding picture at him; that she broke the Valentine box of candy over his head and committed other acts of physical violence against the defendant. Of course she claimed that all of these acts of violence were brought about by provocation on the part of the defendant. While she may have been irritated by the alleged conduct of the defendant, the record shows that she was fully able to retaliate in kind on every occasion when they had arguments or physical altercations; and she frankly stated that she "would do it again".

Where a defendant in a divorce action proves the existence in his favor of a cause of action for divorce against the plaintiff it constitutes recrimination, and is a bar to plaintiff's cause of action. Retterath v. Retterath, 76 N.D. 583, 38 N.W.2d 409; Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519, and cases cited there.

We believe that recrimination by the plaintiff is established by her own testimony and that it constitutes a bar to her cause of action for divorce.

On the 18th day of December 1956, the trial judge issued an Order holding the defendant in contempt for failing to comply with his order made on the 24th day of October 1956 requiring the defendant to make payments for the support of the children and the plaintiff as provided by the judgment of divorce. The contempt order provided that the defendant be imprisoned in the county jail until payments were made, said jail sentence to commence on the 18th day of December 1956. The Order provided however that since the defendant claimed that his inability to meet the obligations imposed upon him by the Order of October 24th was due to illness and incapacity based upon physical, mental and emotional conditions beyond his control the prison sentence imposed was to be held in abeyance on the condition that the defendant submit himself for an examination and diagnosis at the State Hos-

pital at Jamestown, North Dakota, before the 1st day of January 1957.

On the 31st day of December 1956 the trial judge made a second Order holding the defendant in contempt, which order allegedly was made upon information by the superintendent of the State Hospital at Jamestown, North Dakota, to the effect that the defendant appeared there on the 28th day of December, but refused and neglected to enter said hospital as he had agreed to, and that he thereby violated the conditions on which the former sentence was suspended. The trial judge thereupon issued an order that defendant be committed to jail, but if during the period of his imprisonment as aforesaid he should be committed to the State Hospital at Jamestown, North Dakota, by a county court having jurisdiction, that the sheriff of Rolette County should in such case regard the imprisonment as suspended during such period of commitment and notify the court of such change therein.

On the 7th day of January 1957 an information was filed with the Insanity Board of Pierce County, North Dakota, which information was signed by Clarence Johnson, Sheriff of Rolette County, alleging that the defendant was a fit subject for observation and treatment at the State Hospital at Jamestown. Warrant was accordingly issued and handed to the Sheriff. The defendant was brought before the Board and hearing thereon was had on the 7th day of January 1957. At such hearing before the Insanity Board the following proceedings were had:

"Dr. Johnson (a physician and member of such Insanity Board) made the following motion: After review of the complaint and after discussing those factors with Mr. Chris Albrecht, patient in this case, it is my opinion that this man is not a fit subject for observation at Jamestown, and, under such circumstances, I make a motion that this Board do not send this patient to Jamestown for observation. Motion second-

ed by A. R. Jongewaard and motion carried unaminously."

On the 9th day of January 1957 the defendant appealed to the Supreme Court from the Contempt Orders of the District Court issued on the 18th and 31st day of December 1956 holding him in contempt and from the whole of such Orders. The notice of appeal together with sufficient undertaking was duly served upon the plaintiff and plaintiff's counsel.

The grounds upon which the contempt orders of December 18th and December 31st were founded are substantially as follows:

The defendant owned a lot in the City of Rolla upon which he had a dwelling house. Due to an explosion the dwelling house was wrecked beyond repair. The dwelling house was insured in the sum of $5,000; there were incumbrances upon the house and lot in the sum of approximately $2,500. The insurance premiums were paid by the mortgagee. The contempt proceedings were based upon the fact that the defendant had failed to make proper proof of loss so that he could collect the proceeds of the insurance policy over and above the incumbrances upon the property. The amount of such balance would be approximately $2,500. The trial court was of the opinion that defendant should have used the same in payment of support of the plaintiff and the children in her custody as ordered by the divorce judgment. The defendant's failure to secure the proceeds of the insurance and to apply it as ordered were the grounds upon which said contempt orders were made.

The defendant claimed that the proceeds of the insurance policy upon his home at Rolla was exempt under Subdivision 7 of Section 28-2202, NDRC 1943, which exempts the homestead of the head of a family from levy and execution. He further stated that he intended to use the insurance money for the purpose of rebuilding another house upon his lot. We are unable to agree with the trial court that the failure of the defendant to collect the insurance money and apply

it in payment of support for the plaintiff and children constituted sufficient grounds for finding the defendant in contempt as was done under the Contempt Orders of December 18th and December 31st, 1956. Under the provisions of Section 14–0525, NDRC 1943, the trial court had the power to require either party to give reasonable security for providing maintenance or for making any payments required under the provisions of law and to enforce the same by appointment of a receiver or by any other remedy applicable to the case. The trial court had the power under the law to appoint a receiver who would have authority to make the necessary proof of claim for the amount due upon the insurance policy in question and to disburse the proceeds in accordance with any valid order of the trial court.

There were five separate hearings had in this case. At one of these hearings the Rev. S. A. Glassgow, Rector of the Episcopal Church of Walsh County, was called and sworn as a witness. He testified that he had interviewed Mr. and Mrs. Albrecht on several occasions, evidently for the purpose of ascertaining whether a reconciliation could be effected. In his opinion a reconciliation was out of the question. A very lengthy document prepared by the Rev. Glassgow is in the record entitled "A Psychiatric Social Evaluation in the Case of Albrecht v. Albrecht." This document is an academic discussion of psychiatric theories or principles which the author seeks to apply to the conduct of the plaintiff and defendant. Many of his conclusions are drawn from hearsay evidence,—that is information from friends of the parties who were not witnesses at the trial. While this document may be interesting to a psychiatrist, it is of no weight as evidence upon the issues in the instant case.

At the request of the plaintiff the defendant introduced in evidence his Federal Income Tax reports for the years 1949 to 1953, inclusive and they were introduced as exhibits 1, 2, 3, 4 and 5. The correctness of these income tax reports were not questioned by the plaintiff. The defendant is a carpenter by trade and his work is therefore seasonal. The average income for the years covered by exhibits 1 to 5 was between $1,-200 and $1,300. The defendant testified that when he was employed and working he paid the plaintiff $22.50 a week, as ordered by the court, but when he didn't have work he paid $10 to $12.50 per week. He testified further up to November 1st of the year 1954 he earned $970 and that he had no work after November 1st, of that year. This testimony is not questioned by the plaintiff. It appears therefore that the defendant had made all the payments he possibly could considering his limited income. Under the circumstances we do not believe that his failure to make proof of claim to the proceeds of the insurance on his home was of such serious character as to require resort to the harsh measure of citing him for contempt and committing him to jail.

After a careful consideration of the evidence and the entire record we conclude that the judgment for divorce granted plaintiff must be reversed, except the part granting custody of the children to the plaintiff. The contempt orders of December 18th and December 31st, 1956, are vacated and set aside.

Although under the evidence the plaintiff is not entitled to a divorce, she is nevertheless entitled to support and maintenance for herself and the minor children. Sec. 14–0526, NDRC 1943, provides:

"Though a judgment of divorce is denied, the court in an action for divorce may provide for the maintenance of the wife and her children, or any of them, by the husband."

Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519; Savre v. Savre, 77 N.D. 242, 42 N.W.2d 642; Mattson v. Mattson, 79 N.D. 381, 56 N.W.2d 764.

The record is remanded to the district court with directions to consider the matter of support of the plaintiff and the minor children, allowance for attorneys fees in the

district court, the right of the defendant to visitation with the children as may seem reasonable upon this record and upon such further record as may be made herein by the court in the exercise of its judicial discretion. The case is remanded for further proceedings in accordance with this opinion.

GRIMSON, C. J., and JOHNSON, BURKE and MORRIS, JJ., concur.